J-S30043-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSHUA CHARLES SIEPLE | |
| Appellant | No. 1771 MDA 2013 |

Appeal from the Judgment of Sentence August 28, 2013
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0006012-2007

BEFORE:  BENDER, P.J.E., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:            **FILED AUGUST 12, 2014**

Joshua Charles Sieple ("Appellant") appeals from the judgment of sentence of 4 to 12 months of incarceration following the revocation of probation for his possession of child pornography[1] conviction.   For the reasons set forth herein, we affirm.

On September 4, 2007, a criminal complaint charged Appellant with one count of Criminal Solicitation – Possession of Child Pornography, 18 Pa.C.S. § 902(a) and one count of Sexual Abuse of Children – Child Pornography, 18 Pa.C.S. § 6312(d). The Affidavit of Probable Cause alleged Appellant, while in an internet chat room, requested and received pictures of naked individuals under the age of 16. Trial Court Opinion, February 25, 2014 ("Opinion"), at p. 2. After obtaining and executing a search warrant,

_____

[1] 18 Pa.C.S. § 6312(d)(1).

the police located the obscene photographs on the hard drive of a computer to which Appellant had access. *Id*.

On January 2, 2008, Appellant pled guilty to count 2, Sexual Abuse of Children – Child Pornography, pursuant to a plea agreement and the Commonwealth withdrew count 1, Criminal Solicitation – Possession of Child Pornography. N.T. 1/2/2008 at pp. 1-4. On March 24, 2008, the trial court sentenced Appellant to three years of probation, fulfillment of all Megan's Law reporting obligations, and forfeiture of his computer. N.T. 3/24/2008 at 1-2; N.T. 8/28/2013, p. 4. An individual subject to the Megan's Law reporting obligations, by the language of the statute, is not required to refrain from contact with minors. *See* 42 Pa.C.S. § 9799.15 *et seq.*; N.T. 3/24/2008 at 2-4.

On February 27, 2001, the Honorable John H. Chronister, then President Judge of the York County Court of Common Pleas, issued an administrative order directing the York County Probation Department to incorporate a set of specific sex offender conditions into the probation/parole conditions for all defendants sentenced to probation or released on parole supervision where the defendant had committed an offense of a sexual nature. N.T. 8/28/2013, pp. 10-12, 14-15.[2] Possession of child pornography

_____

[2] As noted by the trial court, the administrative order stated:

> It is hereby ordered sex offender conditions be incorporated into a Defendant's probation/parole supervision based on the following offenses and any

*(Footnote Continued Next Page)*

is an offense of a sexual nature. N.T. 8/28/2013, pp. 15-16, 20. The conditions included not frequenting areas primarily attended by minors such as theme parks, malls, or movie theaters, and undergoing sex offender treatment counseling if deemed appropriate by the parole/probation officer. Pursuant to and in furtherance of the 2001 administrative order, York County Adult Parole and Probation included sexual offender conditions as part of Appellant's probation. [3] He received written notice of these conditions within 24 hours of his sentencing, and acknowledged his awareness that he would be subject to the sex offender conditions by signing a copy of them. N.T. 8/28/2013, pp. 10-11. He did not challenge the propriety of those conditions by filing post-trial motions or directly appealing the original conditions of his sentence.

On March 19, 2009, the York County Adult Parole and Probation Department requested Appellant's detainer for the failure to successfully

_(Footnote Continued)_ _____

> other offense not listed below which may be of a sexual nature.

N.T. 8/28/2013, p. 9. The administrative order then listed several sexually related offenses, including the offense of possession of child pornography. **Id. See also** Appellant's Brief at 6-7.

[3] We note there was also a January 24, 2012 administrative order that effectively renewed and modified the probation conditions for convicted sexual offenders imposed by the 2001 administrative order. **See** Administrative Order Imposing Conditions of Probation and Parole for Adult Sexual Offenders and Imposing Cost of Treatment on Sexual Offenders, January 24, 2012, at 1-6. Because the Commonwealth does not argue that this order impacts Appellant's probationary conditions, we need not address its applicability.

complete sex offender treatment. On May 15, 2009, at his probation violation hearing,[4] Appellant admitted the violation – specifically, that he failed to pay for the costs of the treatment – and was released from York County Prison. The trial court revoked Appellant's probation and imposed a sentence of time-served to 23 months of incarceration with a consecutive one-year probation term.[5] Appellant was further ordered "to abide by the original terms and conditions of his supervision." N.T. 5/15/2009 p. 5.

On June 3, 2010, the York County Adult Parole and Probation Department filed a second detainer on the grounds that Appellant again violated the sex offender conditions of his parole. On August 23, 2010, at the parole violation hearing,[6] Appellant admitted the violation. The trial court sentenced Appellant to completion of a Character Development Program, "the unserved balance of 642 days [of incarceration] with re-parole after serving 120 days [or] . . . . [upon] complet[ion of] the Character

_____

[4] On April 3, 2009, Appellant waived his *Gagnon I* hearing. We find that by waiving this hearing, and the subsequent hearings, noted below, Appellant conceded that there was probable cause to believe he committed a violation of his probation. *See Commonwealth v. Sims*, 770 A.2d 346, 350 (Pa.Super.2001). He initially filed a petition for a writ of habeas corpus. On May 15, 2009, by agreement of the parties, Appellant orally withdrew that petition on the record and asked to proceed with the probation violation hearing.

[5] "Time served" refers to Appellant's incarceration of 58 days from the date the detainer was issued – March 19, 2009 – until the date of his probation violation hearing – May 15, 2009.

[6] On June 11, 2010, Appellant waived his *Gagnon I* hearing.

Development Program[, whichever comes first], [and] . . . . a one year period of consecutive probation."[7] N.T. 8/23/2010 pp. 3-4. On September 17, 2010, Appellant signed a parole plan that granted his release from incarceration with the special condition that he comply with sex offender conditions.

On May 11, 2011, the York County Parole and Probation Department issued a third detainer for Appellant's failure to make payments and for assaultive behavior against his fiancé in violation of his parole. On July 18, 2011, at his parole violation hearing,[8] Appellant admitted the violations. The trial court sentenced Appellant to

> serve the the unserved balance of his term of approximate[ly] 541 days with the possibility of re-parole after serving 6 months. Reparole will be subject to the same terms and conditions as previously imposed and subject to the additional special condition that you complete the Thinking For A Change Program while incarcerated and also continue counseling with the TRIAD Treatment

---

[7] Although the record reflects that the trial court imposed a sentence of incarceration and completion of the Character Development Program on "count 1" and a consecutive sentence of probation on "count 2," Appellant only pled guilty to count 2. *See* N.T. 8/23/2010 pp. 3-4. It may be inferred from the transcript and original record that this resulted from the trial court's misreading of the docket, and that this split sentence was imposed solely on count 2. *Id*. Additionally, Appellant does not contend that his prior or current sentences were illegal on that basis.

[8] On May 24, 2011, Appellant waived his *Gagnon I* hearing. Appellant initially filed a motion to suppress the evidence supporting the parole violation. On July 18, 2011, by agreement of the parties, Appellant orally withdrew that motion on the record and asked to proceed with the parole violation hearing.

> Specialists to include the conduct that was set forth in the parole violation report.
>
> We will direct that with regard to [c]ount 2. We will sentence him to a consecutive term of 12 months['] probation.

Order Dated 7/18/2011, p. 1. On November 3, 2011, Appellant completed a parole plan, which provided that he comply with sex offender conditions.

On June 19, 2013, the York County Parole and Probation Department issued a fourth detainer for Appellant based on allegations that he was frequenting areas attended by minors in violation of the sex offender conditions of his probation.[9] On August 28, 2013,[10] at the probation violation hearing,[11] the trial court found Appellant violated his probation and sentenced him to 4 to 12 months of incarceration in York County Prison and, upon parole, "to the standard terms and conditions of the probation department and the additional special conditions consisting of the sex offender conditions currently in effect." N.T. 8/28/13, p. 21.

_____

[9] At the time the fourth detainer was issued, Appellant was serving the consecutive 12-month probation sentence that he received on May 15, 2009. According to the York County Parole and Probation Department, Appellant's 23-month sentence expired on October 17, 2012, and the probation sentence became effective on October 18, 2012.

[10] The probation violation hearing was originally scheduled for August 26, 2013. At that hearing, when Appellant submitted a two-page brief in support of his position that the sex offender conditions were not applicable to the term of his probation, the trial court ordered the hearing rescheduled for August 28, 2013.

[11] On June 27, 2013, Appellant waived his *Gagnon I* hearing.

Appellant timely filed a Notice of Appeal on September 27, 2013. Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.[12] Appellant now raises the following issues on appeal:

I.    Whether an administrative order that revokes or modifies a defendant's conditions of probation without a hearing violates the due process clauses of the 5th and 14th Amendments to the U.S. Constitution and Article 1, Sections 9 and 11 of the Pennsylvania Constitution?

II.    Whether the trial court erred when it found Appellant in violation of special sex offender conditions that the court had imposed in Appellant's original sentence but were not re-imposed by the court when Appellant was re-sentenced for a subsequent probation violation?

Appellant's Brief at 4.[13]

The scope of review in an appeal following a sentence imposed after probation revocation is limited to the validity of the revocation proceedings and the legality of the sentence imposed following revocation. ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1035 (Pa.Super.2013). Our

---

[12] On October 4, 2013, the trial court entered an order directing Appellant to file a Statement of Matters Complained of on Appeal within twenty-one (21) days. On October 29, 2013, the trial court granted Appellant an extension to file his 1925(b) Statement until December 2, 2013. Appellant failed to file a 1925(b) Statement and, on December 11, 2013, the trial court issued a Rule 1925(a) Statement. On December 12, 2013, Appellant filed a Petition to Reinstate his Appellate Rights and Accept his Nunc Pro Tunc 1925(b) Statement. The trial court granted this request by order dated December 17, 2013.

[13] Appellant raised four (4) issues in his 1925(b) Statement. He briefed only the above-listed claims. Accordingly, he has waived his remaining claims. ***See Commonwealth v. Rush***, 959 A.2d 945, 950-51 (Pa.Super.2008).

standard of review for a constitutional challenge to the legality of a sentence and general questions of law is *de novo*, and our scope is plenary. ***Commonwealth v. Shawver***, 18 A.3d 1190, 1194 (Pa.Super.2011).

Due process is a flexible concept and calls for such procedural protections as the particular circumstances require. ***In the Interest of F.C. III***, 2 A.3d 1201, 1215 (Pa.2010) (citing ***Morrisey v. Brewer***, 408 U.S. 471, 481 (1972)). A defendant has a liberty interest in the revocation of probation. ***Gagnon v. Scarpelli***, 411 U.S. 778, 781 (1973) (minimum due process requirements for probation revocation are identical to those established in ***Morrisey v. Brewer, supra***, for parole revocation). Although revocation of probation, like revocation of parole, is not part of a criminal prosecution, it entails a loss of liberty and minimum due process must therefore be accorded the probationer. ***Commonwealth v. Davis***, 336 A.2d 616, 620 (Pa.1975) (citing ***Gagnon***, 411 U.S. at 781). Specifically, a two-step revocation procedure must be followed: a probationer is entitled to two hearings, one is a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his probation (a Gagnon I Hearing),[14] and another,

---

[14] "At the preliminary (*Gagnon I*) hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing." ***Gagnon v. Scarpelli, Supra***, 411 U.S. at 786.

more comprehensive hearing prior to a final revocation decision (a Gagnon II Hearing). ***See id***. at 620. As we have previously explained:

> The Gagnon II hearing entails, or may entail, two decisions: first, a consideration of whether the facts determined warrant revocation. The first step in a (Gagnon II) revocation decision . . . involves a wholly retrospective factual question: whether the parolee (or probationer) has in fact acted in violation of one or more conditions of his parole (or probation). . . . Only if it is determined that the parolee (or probationer) did violate the conditions does the second question arise: should the parolee (or probationer) be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?

***Davis***, 336 A.2d at 621 (internal quotations and citations omitted).

While considerations of substantive fairness apply to probation revocation proceedings, ***see, e.g., Bearden v. Georgia***, 461 U.S. 660, 667 n. 7 (1983) (citing ***Morrisey, supra***), a person who has been convicted of a crime and placed on probation "does not enjoy the full panoply of constitutional rights otherwise enjoyed by those who (have) not run afoul of the law." ***Commonwealth v. McBride***, 433 A.2d 509, 510 (1981) (internal citation and quotations omitted). At a ***Gagnon II*** revocation hearing, the Commonwealth must prove a violation of probation by a preponderance of the evidence. ***See Commonwealth v. Sims***, 770 A.2d 346, 350 (Pa.Super.2001). When no evidence of a violation exists, a substantive due process violation ensues if a trial court revokes a probationer's probation. ***See Douglas v. Buder***, 412 U.S. 430, 432 (1973) (violation of substantive

due process when state court revoked probation with no evidence that the probationer had violated probation).

Appellant does not dispute that the sex offender conditions were reasonably related to his possession of child pornography conviction or that he was made aware of those conditions within 24 hours of his original sentencing. *See* Appellant's Brief, *generally*; N.T. 8/28/2013, pp. 10-11. Rather, in his first issue, Appellant maintains the trial court violated his state and federal due process rights when it found he violated special probationary conditions that the 2001 administrative order imposed and York County Adult Probation executed, but that were not mentioned by the trial court at the time of sentencing. *See* N.T. 8/28/2013, p. 20.

Section 9754 of the Pennsylvania Sentencing Code entitled "Order of probation" states, in relevant part:

> **(a)  General rule.--**In imposing an order of probation the court shall specify at the time of sentencing the length of any term during which the defendant is to be supervised, which term may not exceed the maximum term for which the defendant could be confined, and the authority that shall conduct the supervision.
>
> **(b)  Conditions generally.--**The court shall attach such of the reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life.
>
> **(c)  Specific conditions.--**The court may as a condition of its order require the defendant:
>
> * * *

- 10 -

(3) To undergo available medical or psychiatric treatment and to enter and remain in a specified institution, when required for that purpose.

\* \* \*

(10) To report as directed to the court or the probation officer and to permit the probation officer to visit his home.

\* \* \*

(13) To satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience.

\* \* \*

42 Pa.C.S.A. § 9754. Section 323 of the Pennsylvania Judicial Code, which promulgates the power of the courts of common pleas, provides:

Every court [of common pleas] shall have power to issue, under its judicial seal, every lawful writ and process necessary or suitable for the exercise of its jurisdiction and for the enforcement of any order which it may make and all legal and equitable powers required for or incidental to the exercise of its jurisdiction, and, except as otherwise prescribed by general rules, every court shall have power to make such [local] rules and orders of court as the interest of justice or the business of the court may require.

42 Pa.C.S.A. § 323. "[T]he term 'local rule' shall include every . . . administrative order . . . which is adopted or enforced by a court of common pleas." **See** Pa.R.Crim.P. 105 (defining the term "local rule"). "[P]rocedural rules, either at the state or local level, are absolutely essential to the orderly administration of justice and the smooth and efficient operation of the

- 11 -

judicial process. Every court has a limited power to make such rules as the interest of justice or the business of the court may require." ***Equip. Fin., Inc. v. Toth***, 476 A.2d 1366, 1369 (Pa.Super.1984) (citing 42 Pa.C.S. § 323).

Here, the Commonwealth alleged that Appellant violated sex offender condition 6 of his probation, "Frequenting an area attended by minors."[15] At the May 2009 probation revocation hearing, Appellant was resentenced to, *inter alia*, the "the original terms and conditions of his supervision." Opinion, at 2-3. While Appellant's March 24, 2008 original probation sentence did not include any mention of sexual offender conditions, the conditions were imposed through a 2001 administrative order and implemented by York County Adult Probation, and the Appellant acknowledged his duty to comply with those rules.[16]

The imposition of sex offender conditions to Appellant's probation sentence, pursuant to a prior administrative order of the President Judge of

_____

[15] We note that Appellant acknowledged violating sexual offender conditions at the May 2009, August 2010, and July 2011 probation/parole revocation hearings.

[16] ***See*** N.T. 8/28/2013, pp. 10-11. As discussed above, Sections 9721 and 9754 of the Pennsylvania Sentencing Code empower the trial court, not a county probation authority, with the sound discretion to impose an order of probation and the generalized conditions thereunder. The mandate to include a sexual offender condition was the province of the trial court. 42 Pa.C.S. § 9721(a). Therefore, the President Judge of York County had statutory authorization to issue the 2001 administrative order and impose "Sex Offender Condition 6: Frequenting an area attended by minors."

the York County Court of Common Pleas, was a valid exercise of the trial court's sentencing authority. **See Commonwealth v. Elliot,** 50 A.3d 1284, 1292 (Pa.2012).[17] The 2001 administrative order is a local rule that the President Judge of York County Common Pleas found "absolutely essential to the orderly administration of justice and the smooth and efficient operation of the judicial process." **Toth**, 476 A.2d at 1369. By providing standard probation conditions for those convicted of and on probation for sexual offenses, the rule promotes the expedient and efficient administration of justice in York County. Therefore, as York County determined the "interest of justice" and/or the "business of the court" required this local procedural rule, it is valid provided that it does not run afoul of the Sentencing Code and "defendant's essential constitutional liberty and freedom of conscience" **Id.**; **Commonwealth v. Hall**, 80 A.3d 1204, 1212 (Pa.Super.2013).

The 2001 administrative order comports with Sections 9721 and 9754 of the Sentencing Code; the specific nature of a sexual offense conviction allowed the President Judge of York County to issue an administrative order

---

[17] In **Elliot**, **supra**, our Supreme Court held that a condition of probation that defendant should not "enter or loiter within 1,000 feet of areas where the primary activity at such locations involves persons under the age of 18" was derivative of trial court's condition of probation that defendant not have "unsupervised contact with minors" and, thus, a permissible condition of supervision imposed by the Pennsylvania Board of Probation and Parole. Notably, the **Elliot** Court found the Pennsylvania Board of Probation and Parole's imposition of a specific condition of probation proper only after the trial court imposed a generalized condition of probation of "no unsupervised contact with minors". **See id.**

that imposed standard conditions of probation for these convictions. **_See_**

**_Elliot,_** 50 A.3d at 1292. York County Probation was then permitted to

fashion more tailored conditions of supervision pertaining to that probation,

so long as those supervisory conditions were in furtherance of the trial

court's condition(s) of probation. **_Id._**

Nor did the trial court's revocation of Appellant's probation based on

evidence that he violated one of the sex offender conditions of probations

amount to a due process violation. As discussed above, the sex offender

conditions of probation were valid because the York County President Judge

acted within his authority when he issued standard probation conditions for

sexual offenses. Appellant had notice of the specific sexual offender

probation conditions imposed by the trial court through its 2001

administrative order within 24 hours of his original sentencing, expressly

agreed to those conditions in writing, and failed to challenge those

conditions at that time. [18] N.T. 8/28/2013, pp. 10-11. As the trial court

revoked Appellant's probation based on evidence that he had violated his

probation, the trial court did not deprive him of a liberty interest guaranteed

by the Fourteenth Amendment to U.S. Constitution and Article 1 Section 9 of

_____

[18] Appellant's admission that the trial court imposed sexual offender conditions as part of his original sentencing further serves to defeat his argument. **_See_** Appellant's "[Statement of] Question(s) Involved", at p. 4; Appellant's Brief at 14.

Pennsylvania Constitution without due process of law. *See Bearden v. Georgia*, 461 U.S. 660, 667 n. 7 (1983).

Appellant next argues the trial court erred when it found he "violated special sex offender conditions that the [trial] court had imposed in Appellant's original sentence but were not re-imposed by the [trial] court when Appellant was re-sentenced for a subsequent probation violation." Appellant's Brief at pp. 4, 14.

As discussed *supra*, the 2001 administrative order, along with Appellant's conviction for a sexual offense, directed York County Probation to incorporate specific sexual offender conditions as part of his probation each time it was ordered, including at Appellant's third re-sentencing on November 3, 2011. York County Probation complied with this directive by articulating specific sexual offenders as part of his probation. Appellant agreed to these specific conditions in writing during his probation intake. In May 2009, the trial court resentenced Appellant for probation violations, expressly incorporating the original sexual offender conditions. *See McBride*, 433 A.2d at 510 ("[a] trial court which has revoked probation may modify the original probationary period by lengthening it and by adding reasonable conditions"); 42 Pa.C.S. § 9771(b) (granting re-sentencing court that has found proof of violation of a condition of probation broad discretion to sentence a defendant according to those "alternatives . . . available at the time of initial sentencing"); 42 Pa.C.S. § 9754 (plain terms empower sentencing court to impose reasonable conditions of probation to assist the

defendant in leading a law-abiding life and does not prohibit incorporation of conditions of probation by reference to original sentence). Therefore, contrary to Appellant's assertions, the trial court acted within its discretion by re-imposing the original probation conditions by incorporating them by reference. Further, in 2011, based on the reasoning above,[19] the trial court re-imposed the sex offender conditions through its 2001 administrative order despite not mentioning them at the time of sentencing.

Judgment of sentence **affirmed**. Jurisdiction **relinquished**.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/12/2014

_____

[19] **See** discussion on pp. 12-14.