**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**George SIMS, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 4, 2000.

Filed March 5, 2001.

---

Albert J. Flora, Public Defender, Wilkes–Barre, for appellee.

Frank P. Barletta, Asst. Dist. Atty., Wilkes–Barre, for Com., appellee.

Before POPOVICH, TODD and OLSZEWSKI *, JJ.

POPOVICH, J.:

¶ 1 This is an appeal from the order entered in the Court of Common Pleas of Luzerne County. Upon review, we reverse.

¶ 2 The relevant facts and procedural history are as follows. On May 7, 1998, appellant was arrested following his involvement in an altercation on West Broadway Street in Larksville. On September 2, 1998, appellant pleaded guilty. He was sentenced to nine to twenty-three months incarceration for aggravated assault, one year of probation for terroristic threats to be served consecutively to the sentence for aggravated assault and one year of probation on the remaining charges to be served concurrently to the probation for terroristic threats. On May 27, 1999, appellant's application for parole was granted. He was released and given credit for time served.

¶ 3 On September 26, 1999, appellant was arrested for disorderly conduct and public drunkenness. He pleaded guilty to public drunkenness. The disorderly conduct charge was withdrawn. On April 21, 2000, appellant was arrested and charged with two counts of rape and one count of indecent assault. Probation revocation hearings followed. He waived his right to the preliminary probation revocation hearing (*Gagnon I*) on May 10, 2000. On June 2, 2000, the full probation revocation hearing (*Gagnon II*) was held. At the hearing, the Commonwealth presented the testimony of Sergeant David Cerski who investigated the alleged rape. He testified that he interviewed the victim and that a rape kit was collected and later transported to the Pennsylvania State Police Lab. The rape kit was still at the police lab at the time of the hearing. The sergeant also

* OLSZEWSKI, J., did not participate in the consideration or decision of this case.

testified that the doctor treating the victim reported no injuries or bruises to the vaginal area. He then stated that after interviewing the doctor, he re-interviewed the victim, and appellant was subsequently arrested and charged with rape and indecent assault. Following the testimony of the sergeant, the Commonwealth was granted a continuance to provide further evidence that appellant committed the crimes charged. The hearing was continued until June 28, 2000, at which time the lower court found that because appellant waived the *Gagnon I* hearing, there was sufficient evidence to revoke his probation. Consequently, appellant's probation was revoked with regard to the terroristic threats conviction, and he was re-sentenced to six to eighteen months of incarceration on that charge to be followed by one year of probation for the remaining charges. This appeal followed.

¶ 4 Herein, appellant argues that his arrest on new criminal charges and waiver of a preliminary hearing on those charges does not constitute sufficient evidence to support a probation violation. He also argues that the imposition of a sentence of incarceration imposed subsequent to the revocation of his probation is illegal.

■■■ ¶ 5 The process and purpose of probation revocation hearings is as follows. When a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a *Gagnon I* hearing, that probable cause exists to believe that a violation has been committed. *Commonwealth v. Ferguson*, 761 A.2d ·613 (Pa.Super.2000) (citing *Commonwealth v. Holmes*, 248 Pa.Super. 552, 375 A.2d 379, 381 (1977)). Where a finding of probable cause is made, a second, more comprehensive hearing, a *Gagnon II* hearing, is required before a final revocation decision can be made. *Commonwealth v. DeLuca*,

275 Pa.Super. 176, 418 A.2d 669, 672 (1980).

■■■ ¶ 6 The *Gagnon II* hearing entails two decisions: first, a "consideration of whether the facts determined warrant revocation." *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). "The first step in a *Gagnon II* revocation decision ... involves a wholly retrospective factual question: whether the parolee [or probationer] has in fact acted in violation of one or more conditions of his parole [or probation]." *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656 (1973) (citing *Morrissey, supra*, 408 U.S. at 484, 92 S.Ct. 2593). It is this fact that must be demonstrated by evidence containing "probative value." *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973). "Only if it is determined that the parolee [or probationer] did violate the conditions does the second question arise: should the parolee [or probationer] be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?" *Gagnon v. Scarpelli, supra*, 411 U.S. at 784, 93 S.Ct. 1756, (citing *Morrissey v. Brewer, supra*, 408 U.S. at 484, 92 S.Ct. 2593). "Thus, the *Gagnon II* hearing is more complete than the *Gagnon I* hearing in affording the probationer additional due process safeguards, specifically: (a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written

statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole." *Commonwealth v. Ferguson, supra,* (citing *Gagnon v. Scarpelli, supra,* 411 U.S. at 786, 93 S.Ct. at 1762; *Morrissey v. Brewer, supra,* 408 U.S. at 489, 92 S.Ct. 2593; *Commonwealth v. Kates, supra,* 452 Pa. at 118, n. 10, 305 A.2d 701, n. 10).

¶ 7 We note that the burden of proof is different in *Gagnon II* hearings and criminal trials. In *Commonwealth v. Kates, supra,* our Supreme Court stated:

> At trial the issue is whether the elements of the offense or offenses charged are present. The focus of a probation violation hearing, even though prompted by a subsequent arrest, is whether the conduct of the probationer indicates that the probation has proven to be an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future antisocial conduct.

*Id.,* 452 Pa. at 114–15, 305 A.2d at 708. Unlike a criminal trial where "the burden is upon the Commonwealth to establish all of the requisite elements [of the offense(s) charged] beyond a reasonable doubt," at a revocation hearing the Commonwealth need only prove a violation of probation by a preponderance of the evidence. *See Commonwealth v. Del Conte,* 277 Pa.Super. 296, 419 A.2d 780 (1980) (citing *United States v. Iannece,* 405 F.Supp. 599 (E.D.Pa.1975); *Commonwealth v. Lipton,* 238 Pa.Super. 124, 352 A.2d 521 (1975)). The threat of revocation may be executed on the basis of an arrest and "evidence of some facts in addition." *Commonwealth v. Davis, supra,* 336 A.2d at 620. A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct. *Com-*

*monwealth v. Brown,* 503 Pa. 514, 469 A.2d 1371 (1983) (citing *Commonwealth v. Burrell,* 497 Pa. 367, 441 A.2d 744 (1982); *Commonwealth v. Kates, supra* ).

¶ 8 We begin our review of appellant's claim that the Commonwealth failed to meet its burden of proof by noting the distinction between the standards of proof required at the *Gagnon I* and *Gagnon II* hearings. At the *Gagnon I* hearing, the Commonwealth must show that there is probable cause to believe that appellant committed a violation of his probation. *Morrissey, supra.* At the *Gagnon II* hearing, the Commonwealth must prove that appellant committed a violation of his probation by a preponderance of the evidence. *Del Conte, supra.* We find that by waiving the *Gagnon I* hearing, appellant conceded that there was probable cause to believe he committed a violation of his probation. However, contrary to the lower court's reasoning, we find that waiver does not amount to an admission at the *Gagnon II* hearing that the Commonwealth established by a preponderance of the evidence that appellant committed a violation of his probation.

¶ 9 At the *Gagnon II* hearing on June 2, 2000, the Commonwealth only presented the testimony of the investigating sergeant who testified he interviewed the victim of the alleged rape. No facts in support of her allegations were introduced into evidence. The sergeant testified that he interviewed the doctor who examined the complainant. The doctor found no injuries to the vaginal area such as bruising, scrapes, or scratches. While the sergeant testified that a rape kit had been collected, he indicated that the results were not available at the date of the hearing. Because there was insufficient evidence to establish that a violation occurred, the lower court granted a continuance to the Commonwealth to produce more evidence

to support the charges against appellant. In overruling the objections of defense counsel, the lower court noted:

> The Court: Under the circumstances I am going to grant them [the Commonwealth] a continuance because of the allegations contained here. We will come back June the 15th at 9:30 to conclude this matter and if there is further evidence by the Commonwealth by a sufficient nature even by a preponderance there won't be any and the violation will be dismissed. N.T., 6/2/2000 at 9.

¶ 10 On June 15, 2000, the Commonwealth again requested a continuance to obtain witnesses in support of the charges against appellant. N.T., 6/15/00, at 2. On June 28, 2000, the final *Gagnon II* hearing was held. At the hearing, the Commonwealth was still unable to produce any evidence in support of the allegations against appellant. It provided no witnesses, no testimony from the victim, and no physical evidence that a rape occurred. Instead, it offered the following argument:

> The Commonwealth: On May 4, 2000, the Defendant waived those charges at the preliminary hearing to county court. Therefore, by doing that he has acknowledged that the Commonwealth has established a *prima facie* case.
>
> The Defense: No, I don't believe that was the nature of the waiver. I believe the wavier is not nearly enough by waiving.

* * *

> The Court: Whether waiver is enough to make a finding of a *prima facie* case—
>
> The Defense: Your Honor, for revocation of probation or parole under the applicable standard in Pennsylvania law, the fact that the Defendant has

waived the preliminary hearing is not nearly enough to—of itself to find a violation of probation and parole.

> The Commonwealth: Your Honor, it is enough that he didn't challenge the Commonwealth's *prima facie* case and it is—
>
> The Court: Will you do that under a *habeas corpus?* Isn't that what you do? There was none filed.
>
> The Commonwealth: There has been none filed, Your Honor. This is-and if the Court is inclined not to look at the *prima facie* case for rape of a mentally challenged woman-
>
> The Court: I'm not talking about that. What we're talking about are the surrounding circumstances when you have a petition to revoke probation or parole. If it is a situation where there are no facts except an arrest, I'm asking counsel, is that enough to revoke probation? And if someone can show me that in the law, I'll be happy to confine-confirm what you're saying. N.T., 6/28/00 at 4–5.

* * *

> The Commonwealth: Judge, what I'm saying is that the fact that this Defendant was arrested, the underlying facts of the arrest, the fact that he waived these preliminary hearings, he will face charges in county court. And that conduct occurred while he was on probation for what the Commonwealth considers violent offenses. He has demonstrated that he cannot remain-he cannot abide by rules and regulations of adult probation and parole and that he should be-at this point, that privilege of being on probation should be revoked.
>
> The Court: Now, I will agree with you that when you talk in terms of violat-

ing the rules of the probation or parole office. That shows he is a person who is not a candidate for probation or parole. But the fact that someone violates technical rules of probation and parole does not mean they're not a viable candidate to be continued on either parole or on probation. It depends on what the facts are. If his situation is one where he can't go out in the community because he's going to harm somebody and the facts before the Court indicate that, then that's a viable reason to take him off probation or parole.

The Commonwealth: And I think, Your Honor, that those facts are before the Court that he's not. He cannot be out in the community at this point. Your Honor, I would just say, with the facts that were presented at the first hearing, that this Defendant was with a lady. We knows (sic) she went to a hospital from the testimony. We know that at the hospital she submitted herself to a sexual abuse—

The Defense: I would dispute that, Your Honor. Let's get the transcript of the first hearing and we'll see what's on the record.

The Court: Just a second. Let me just ask you a question. Assume that what you are saying is correct, there's got to be medical records. There's got to be something in those indicating what happened. That's part of the treatment. Doesn't that tell us what happened? *I'm satisfied at this point that because he waived the minimum hearing that that's sufficient to revoke.* N.T., 6/28/00 at 10–11.

¶ 11 We know of no law that allows for probation to be revoked solely on the basis of an arrest and waiver of a preliminary hearing. On the contrary, we have found that an arrest alone, without facts to support the arrest, is not sufficient to revoke probation or parole. *Davis, supra; see also, Commonwealth v. Warren,* 250 Pa.Super. 522, 378 A.2d 1271 (1977) (Mere arrest does not constitute violation of probation). Thus, while we agree that by waiving the *Gagnon I* hearing, appellant has conceded that the Commonwealth has established a *prima facie* showing that probable cause exists to believe a violation of probation has occurred, we disagree that by waiving the *Gagnon I* hearing, appellant also conceded that the Commonwealth has proven by a preponderance of the evidence that a violation occurred.

¶ 12 The purpose of having two hearings, a *Gagnon I* and a *Gagnon II,* is to allow for a factual determination of whether a violation occurred and to give each side the opportunity to present evidence in support of its case. *Morrissey, supra.* Notably, the purpose of having a *Gagnon II* hearing is to provide appellant additional due process safeguards. *Gagnon, supra.* Accordingly, the Commonwealth is required to meet a higher standard of proof at the *Gagnon II* hearing. Those additional due process safeguards, particularly with regard to the higher standard of proof required in establishing a violation, would be rendered meaningless if we found that by waiving the *Gagnon I* hearing, that appellant conceded his guilt with regard to having committed a probation violation. Similarly, a defendant who waives his preliminary hearing does not concede that he is guilty of the charges against him. Rather, he agrees to be bound over for trial where evidence is presented before a finding of guilt is rendered. We do not allow for the defendant to be found guilty by waiver of his preliminary hearing. Likewise, in this case, we cannot allow appellant's probation to be permanently revoked simply because he waived his *Gagnon I* hearing.

¶ 13 Accordingly, we find that the lower court erred by concluding that the waiver of the *Gagnon I* hearing by appellant was sufficient to revoke his probation. The Commonwealth failed to provide any evidence to establish that appellant committed a violation of his probation. Thus, with no proof by the Commonwealth that appellant violated his probation, we must reverse the lower court's revocation of appellant's probation.

¶ 14 Order reversed and remanded. Jurisdiction relinquished.