J-S46042-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PETER WILSON, | : | |
| | : | |
| Appellant | : | No.  3072 EDA 2015 |

Appeal from the Judgment of Sentence September 10, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0508011-2004

BEFORE:    BENDER, P.J.E., OTT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED JULY 15, 2016**

Peter Wilson (Appellant) appeals from the judgment of sentence entered following the revocation of his probation.  After review, we vacate Appellant's judgment of sentence and remand for proceedings consistent with this memorandum.

The probation violation court summarized the background of this case as follows.

> On April 14, 2005, [Appellant] was found guilty after a jury trial … of endangering the welfare of a child [(EWOC)], 18 Pa.C.S. § 4304, as a felony of the third degree, and indecent assault, 18 Pa.C.S. § 3126, as a misdemeanor of the third degree.
>
> The victim was [Appellant's] nine year-old daughter.
>
> On July 14, 2005, [Appellant] was sentenced to one  to seven years [of incarceration] for the EWOC conviction; and five years [of] probation for the indecent assault conviction, to run consecutively.  [Appellant] was found not to be a sexually violent

*Retired Senior Judge assigned to the Superior Court.

predator; however, [Appellant] was required to comply with the registration requirements under Megan's Law.

On July 19, 2005, [Appellant] filed a motion for reconsideration of his sentence, which this [c]ourt granted on August 16, 2005.

On October 28, 2005, [Appellant] was re-sentenced to one to four years [of incarceration] for the EWOC conviction, plus three years [of] probation, and five years [of] probation for the indecent assault conviction to run consecutively.

On April 17, 2008, [Appellant] was released from custody and began a five year Philadelphia County Special Probation.

On April 15, 2009, [Appellant] pled guilty to possession of a controlled substance. Probation was continued and [Appellant] received no further penalty.

On September 23, 2010, [Appellant] was found in technical violation of his probation. Parole was terminated and probation revoked. [Appellant] was sentenced to time served to twenty-three months [of incarceration], plus one year [of] probation for the EWOC conviction, to run consecutively; and five years [of] probation for the indecent assault conviction, to run consecutively.

On September 10, 2015, [Appellant] was found in technical violation of his probation and was sentenced to six to twenty-three months [of incarceration], plus one year [of] probation.

On September 21, 2015, [Appellant timely] filed a motion for reconsideration of sentence, which the [violation court] denied the same day.

On October 9, 2015, [Appellant timely] filed the instant appeal. [The violation court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925, but did file an opinion.]

Probation Violation Court Opinion, 1/11/2016, at 1-2 (unnecessary capitalization and parenthetical numbers omitted).

Appellant raises two issues on appeal.

1. Was not the evidence introduced at the probation revocation hearing insufficient as a matter of law to establish a technical violation of probation?

2. Did not the [violation] court err and violate the requirements of 42 Pa.C.S.A. § 9771(c) by sentencing [A]ppellant to total confinement absent him having been convicted of a new crime, absent any indication that he was likely to commit a new crime, and absent a showing that the sentence was "essential to vindicate the authority of the court"?

Appellant's Brief at 4 (answers of the lower court omitted).

Our scope of review for an appeal based on the imposition of a sentence following probation revocation is limited to determining the validity of the revocation proceedings and the legality of the judgment of sentence. **Commonwealth v. Ortega**, 995 A.2d 879, 884 (Pa. Super. 2010). Revocation of a sentence of probation is a matter committed to the sound discretion of the trial court and will not be disturbed on appeal in the absence of an error of law or an abuse of discretion. **Commonwealth v. Smith**, 669 A.2d 1008, 1011 (Pa. Super. 1996).

A review of how probation revocation proceedings are conducted pursuant to **Gagnon v. Scarpelli**, 411 U.S. 778 (1973), is pertinent to this case.

The process and purpose of probation revocation hearings is as follows. When a … probationer is detained pending a

revocation hearing, due process requires a determination at a pre-revocation hearing, a *Gagnon I* hearing, that probable cause exists to believe that a violation has been committed. Where a finding of probable cause is made, a second, more comprehensive hearing, a *Gagnon II* hearing, is required before a final revocation decision can be made.

The *Gagnon II* hearing entails two decisions: first, a consideration of whether the facts determined warrant revocation. The first step in a *Gagnon II* revocation decision … involves a wholly retrospective factual question: whether the … [probationer] has in fact acted in violation of one or more conditions of his … [probation]. It is this fact that must be demonstrated by evidence containing probative value. Only if it is determined that the … [probationer] did violate the conditions does the second question arise: should the … [probationer] be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation? Thus, the *Gagnon II* hearing is more complete than the *Gagnon I* hearing in affording the probationer additional due process safeguards, specifically: (a) written notice of the claimed violations of [probation] … ; (b) disclosure to the [probationer] … of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body…; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation].

We note that the burden of proof is different in *Gagnon II* hearings and criminal trials…. At trial the issue is whether the elements of the offense or offenses charged are present. The focus of a probation violation hearing … is whether the conduct of the probationer indicates that the probation has proven to be an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future antisocial conduct. Unlike a criminal trial where the burden is upon the Commonwealth to establish all of the requisite elements [of the offense(s) charged] beyond a reasonable doubt, at a revocation hearing the Commonwealth need only prove a violation of probation by a preponderance of the evidence.… A probation violation is established whenever it is shown that the conduct of the probationer indicates the

probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct.

*Commonwealth v. Sims*, 770 A.2d 346, 349-50 (Pa. Super. 2001) (citations and quotation marks omitted).

Here, Appellant claims that the evidence was insufficient to prove a violation of his probation. Specifically, Appellant argues that "[t]he probation officer's testimony did not establish that [A]ppellant was using illegal drugs or was away from his shelter for criminal, violative or improper reasons." Appellant's Brief at 15. Appellant points out that "[h]e was not required to be at the shelter in the same way that one would be required to be present and accounted for at a treatment program." *Id*. Additionally, "[w]hile trying to explain that he would call the shelter if he was going to be out past his curfew for work, the lower court cut him off." *Id*.

A review of the certified record reveals no documentation outlining Appellant's conditions of probation or which conditions he was accused of violating. Additionally, our review of the hearing transcript demonstrates that the hearing Appellant received did not possess the due process safeguards afforded to a defendant at a *Gagnon II* hearing.

The hearing begins with the revocation court stating, "So he's using drugs and driving a car around --." N.T., 9/10/2015, at 3. The revocation court then asks, "Why are there drugs in his system?" *Id*. at 4. Dave Gardner, Appellant's probation officer, responded that Appellant "did give us

prescriptions in the past, not me, *per se*. He gave them to the other agent prior to his supervision with me." *Id*. However, Gardner stated that those prescriptions were expired. The revocation court then asked Appellant whether he was taking Oxycodone. Appellant responded that he was taking "painkillers … because I have a spinal injury." *Id*. at 5. Appellant pointed out that Gardner had only been his probation officer for the prior month-and-a-half, and he had been giving his prescriptions every month to his prior probation officer.

Gardner then switched gears and told the trial court that he stopped Appellant while he was driving a vehicle because the prior probation officer "couldn't make contact with [Appellant] in the field and they had to drag him into the office to get him there because he missed[.]" *Id*. Gardner testified that Appellant told Gardner that Appellant "got hurt on the job" and could not work. *Id*. Gardner further testified that Appellant was not at the "shelter where he was supposed to be." *Id*. Gardner then "waited for [Appellant] one night and [Appellant] then comes driving up in the vehicle that's registered to his boss." *Id*. at 6. Gardner told Appellant to report the next day, and Appellant complied. According to Gardner, Appellant then "admitted to the hot Percocets." *Id*. The Assistant District Attorney (ADA) then spoke for the first time, and asked, "Is he disabled and not working? Why is he driving the boss' car?" *Id*. at 6-7.

Counsel for Appellant responded that Appellant has been "doing sort of under-the-table work" because he "was injured on the job." *Id*. Appellant "filed a lawsuit to get Workers' Comp." *Id*. The revocation court asked Appellant what he was doing on the day he "got picked up." *Id*. Appellant responded that he was "working for a place[] called Mr. Ed's Hood Cleaning Service." *Id*. According to Appellant, it was a company that would clean restaurant hoods "where the exhaust fans would go." *Id*. Appellant stated that when he "was running late to the shelter, [the boss] would let [Appellant] take his car, because [he] had to be in by 10:00 [p.m.]" *Id*. The revocation court then questioned Appellant about why he was gone from the shelter from 6:00 a.m. until 11:00 p.m. even though Appellant was not working that whole time. Appellant responded that he was working and doing physical therapy. Counsel for Appellant then clarified that "the shelter, it's not like a recovery house, so they allow him out during the day. Other than meeting with his parole agent, he is allowed to go even, let's say, just to w[a]nder around town. It's not like it's a program situation where is supposed to be there attending treatment." *Id*. at 10. Gardner then pointed out that Appellant did have a curfew; however, Appellant responded that he had permission to stay out past curfew. At that point, the following exchange occurred:

> THE COURT: You need to control your behavior. You just speak out constantly.

[Appellant]: I'm sorry.

THE COURT: Do you know why? Because you have to defend yourself. Do you know why? Because you are using drugs and running the street. I mean, that's what you do.

[Appellant]: Your Honor, I have thirty-six months clean.

THE COURT: And you're a fast talker.

[Appellant]: Your Honor, I have thirty-six months clean.

THE COURT: No, you don't. You are not clean when you are taking opioids and Oxycodone. Do you understand those are drugs? That's an addiction just like any other. That's what you are taking. Before it was crack. I mean, at one point you got arrested for crack. You've been using drugs the whole time pretty much. You don't have a valid prescription. You're using drugs --

[Appellant]: Your Honor, I do have a valid prescription.

THE COURT: -- you're running the streets, you're driving around in cars that you're not telling them about. I mean, you have to follow the rules. That's the whole point of this. All right.

*Id*. at 10-11.

With no further questioning or discussion, the revocation court found Appellant in technical violation and asked Appellant if there was anything else he wished to say prior to sentencing. Appellant stated the following:

Your Honor, I was not using drugs. Your Honor, the only thing I was taking was the Percocet. I went back to work. This is the first time I've missed since 2004, since I first came in front of you. I've actually tried to change my life, okay? I was not using drugs. I was taking prescription Percocet. That's all I was taking. I wasn't doing anything else. I was running late. That was all I was doing.

*Id*. at 13.

The revocation court asked the Commonwealth if there was anything else. At that point, the ADA spoke for the second and final time during the whole hearing to say, "Your Honor, I have nothing to add at this point." *Id*. The revocation court then sentenced Appellant to six to 23 months of incarceration to be followed by one year of probation.

Based upon this convoluted hearing, Appellant argues that the "Commonwealth failed to meet its burden in this case." Appellant's Brief at 15. We agree. We first point out that the record is unclear as to which conditions of his probation Appellant violated.[1] The Commonwealth argues that "the revocation court heard evidence of [Appellant's] positive drug tests, his Megan's Law reporting violation, and his avoidance of his probation officer." Commonwealth's Brief at 8. Thus, we examine each in light of the aforementioned hearing.

With respect to positive drug tests, the Commonwealth presented no evidence as to when exactly Appellant tested positive for drugs. It is even unclear whether Appellant tested positive for Oxycodone, Percocet, or something else altogether.[2] Moreover, even if Appellant did test positive,

_____

[1] Because the certified record does not contain a written description of exactly what conduct of Appellant's was in violation of the conditions of his probation, Appellant's due process rights may have been violated in this regard. However, in light of our disposition, we need not make such a determination.

[2] The Commonwealth states that Appellant "tested positive for opioids and oxycodone." Commonwealth's Brief at 10. Appellant admitted to having

the revocation court never permitted Appellant the opportunity to present his explanation about his prescription. The record is clear that Appellant did have valid prescriptions at some point in the recent past.

The Commonwealth also argues that Appellant "violated Megan's Law by taking unreported jobs and driving his employer's car." Commonwealth's Brief at 12.[3] The Commonwealth points to 42 Pa.C.S. § 9799.16(b)(12), which states that Appellant must provide "[i]nformation relating to motor vehicles owned or operated by the individual…. [T]he individual shall provide a description of each motor vehicle…. The individual shall provide a license plate number, registration number or other identification number and the address of the place where a vehicle is stored." It is unclear whether a car borrowed on one, or even more than one, occasion requires notification to the state police. For example, an individual only has to register a residence when it is a "location where an individual resides or is domiciled or intends to be domiciled for 30 consecutive days or more during a calendar year." 42 Pa.C.S. § 9799.12. Additionally, an individual only has to register

---

prescriptions for Percocet, which is a combination of oxycodone and acetaminophen. Both are classified as opioids.

[3] The Commonwealth points out that Appellant "had been informed of the requirement to report employment to state police" at the time he was sentenced in 2005. Commonwealth's Brief at 12 n.4. **See also** N.T., 7/14/2005, at 16-17 ("You have to notify the state police within ten days if you move, after registering, or establishing other residence, change employer or employment location for a period of time that will exceed 14 days.").

employment where it is "for a period of time exceeding four days during a seven-day period or for an aggregate period of time exceeding 14 days during any calendar year." *Id*. Thus, driving occasionally in a borrowed car may not even be a violation of Megan's Law.

Finally, the Commonwealth suggests that Appellant "further demonstrated his unwillingness to comply with probation by avoiding his probation officer and failing to report changes in address to probation." Commonwealth's Brief at 12. The Commonwealth argues that Appellant "hid" from his probation officer. *Id*. at 13. However, the record does not support such a conclusion.

Appellant was a resident of a shelter that permitted him to be away from the shelter all day. Thus, we cannot agree that Appellant's failure to be at the shelter when his probation officer went there was a violation of a condition of his probation. Moreover, when Gardner did encounter Appellant, Gardner acknowledged that he could have detained Appellant at that moment, but chose not to do so at that point. *See* N.T., 9/10/2015, at 6. Instead, Gardner told Appellant to come in the next day, and Appellant complied. *Id*. While Gardner did refer generally to other times when "they couldn't make contact with [Appellant] in the field," Gardner did not point to any dates or times when Appellant actually missed scheduled appointments. *Id*. at 5. Thus, we cannot agree that the Commonwealth presented evidence to show that Appellant was avoiding his probation officer.

- 11 -

Based on the foregoing, the Commonwealth did not present sufficient evidence to establish that Appellant was in technical violation of his probation. Moreover, even if the Commonwealth did present sufficient evidence to establish that Appellant committed one or more of the aforementioned technical violations, we point out that the "record in the instant case is devoid of any finding by the court that revocation of Appellant's probation was predicated on his willful or flagrant disrespect of the terms of his probation, that revocation was necessary to vindicate the authority of the court, or that Appellant's conduct … evidenced a likelihood that he would commit another crime if not imprisoned." **Commonwealth v. Ballard**, 814 A.2d 1242, 1246 (Pa. Super. 2003).

In reaching the conclusion that the Commonwealth did not meet its burden, we are cognizant that "[t]echnical violations can support revocation and a sentence of incarceration when such violations are flagrant and indicate an inability to reform." **Commonwealth v. Carver**, 923 A.2d 495, 498 (Pa. Super. 2007). However, even where a violation of probation has occurred, "revocation is not automatic. Rather, the focus must remain on whether probation can still be an effective tool for rehabilitation." **Id**.

Because the Commonwealth did not meet its burden in this case, we vacate Appellant's judgment of sentence and remand for a new probation revocation hearing. **See Commonwealth v. Mullins**, 918 A.2d 82, 86 (Pa.

2007) ("The Superior Court has consistently remanded for new VOP hearings when probation revocations are vacated due to insufficient evidence.").[4]

Judgment of sentence vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 7/15/2016

---

[4] Because Appellant is entitled to a new hearing, we need not consider his second issue, regarding the discretionary aspects of his sentence, at this time.