J-A09025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SAMUEL ADDISON GROVE | |
| Appellant | No. 1822 MDA 2015 |

Appeal from the Judgment of Sentence September 17, 2015
In the Court of Common Pleas of Union County
Criminal Division at No(s): CP-60-CR-0000212-2002

BEFORE:  FORD ELLIOTT, P.J.E., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:                **FILED AUGUST 12, 2016**

In 2002, Samuel Grove was sentenced to 4-8 years' imprisonment plus 12 years' probation for involuntary deviate sexual intercourse ("IDSI").[1]  In 2010, he completed his entire term of imprisonment.  Subsequently, the trial court revoked his probation and resentenced him four times.  The first three revocations were for failure to have an approved residence upon completion of his term of imprisonment.  The fourth revocation of probation - the revocation at issue in this appeal - was for violating an order dated October 9, 2013 requiring Grove to obtain sex offender treatment while on "supervision".  The trial court held that Grove violated this term by failing to

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 3123.

1

obtain sex offender treatment in prison. We agree with Grove that this term only required Grove to obtain sex offender treatment after his release from prison. Accordingly, we reverse.

A detailed factual history is necessary. On December 18, 2002, Grove, who has an I.Q. of 66, pled guilty to IDSI and was sentenced to 4-8 years' imprisonment and 12 years' consecutive probation. The original sentencing order said nothing about the terms of probation other than directing him to serve 144 months under the supervision of the Pennsylvania Board of Probation and Parole. Grove served his full prison term and was released on July 18, 2010.

*First revocation.* Grove's release was short-lived. Just two days after his release, he was detained on a probation violation for not obtaining permission to live at his current residence.

On February 18, 2011, the trial court revoked Grove's probation and sentenced him to 52-106 months' imprisonment with credit of 102 months and 29 days, followed by 134 months' probation. The net effect was for Grove to serve an additional 3 months and 1 day of incarceration while his family found suitable housing for him upon his release.

The February 18, 2011 sentencing order stated with regard to probation:

> The period of incarceration imposed above shall be followed by a period of one hundred thirty-four (134) months of consecutive probation to be *supervised* by the Pennsylvania State Board of

Probation and Parole. The Defendant shall be subject to such terms and conditions of *supervision* as set forth in Judicial Administrative Order AD-0000001-2007 and such other terms and conditions as may reasonably be imposed by the Pennsylvania Board of Probation and Parole or such other appropriate *supervising* authority which shall include, but not be limited to, the following [11 conditions]: …

2. The Defendant shall successfully enroll in, participate in, and complete a program for sex offenders approved by the Pennsylvania Board of Probation and Parole. The Defendant shall be responsible for all costs related to said treatment and shall satisfy those costs in a reasonable time period.

3. The Defendant shall permit his sex offender treatment provider unrestricted communication with the probation officer regarding his attendance level, participation, and any other information deemed necessary by the probation officer to protect the community from his sexually abusive behavior …

Order, 2/18/11 (emphasis added).

*Second revocation.* Grove was unable to provide a home plan during his three months of imprisonment. As a result, he was detained again after the three-month term expired, and the Commonwealth again moved to revoke his probation.

During a hearing on July 26, 2011, Grove stipulated that he did not have an acceptable place to live. The trial court revoked Grove's probation and sentenced him to 1-2 years' imprisonment followed by 110 months' probation. The July 26, 2011 sentencing order provided:

1. That the 134-month consecutive probation on Count No. 1 is revoked.

2. The Defendant is sentenced to a period of not less than one (1) nor more than two (2) years['] incarceration in a State

- 3 -

Correctional Institution, that to be followed by 110 months of probation.

3. The period of probation is to be specially *supervised* by the Pennsylvania State Board of Probation and Parole. While on probation, he will be subject to the conditions of probation set forth in a Judicial Administration Order filed to CP-60-AD-0000001 of 2007. He will also be subject to a condition that he not reside in any residence where any minors reside and that he not be left in the company of any minors by anyone.

4. In addition to the conditions of *supervision* imposed above, the Defendant will be subject to the conditions of *supervision* in Numbered Paragraphs 1 through 11 in the Court's Order and Sentence of February 18, 2011.

5. Upon the Defendant's maxing out on the incarceration portion of this Sentence, the Pennsylvania State Board of Probation and Parole is ORDERED to work with the Defendant and the Defendant's family to find appropriate housing for the Defendant. For purpose of clarity, the Court does not believe it is sufficient to leave the matter in the Defendant's hands. The State Board of Probation and Parole is to assist in the supervision and rehabilitation of its clients. The Court expects the Board to do exactly that with this Defendant of limited intellectual ability and apparently equally limited means.

Order, 7/26/11 (emphasis added).

Grove appealed to this Court at 1550 MDA 2011, but we quashed his appeal for his failure to include a Rule 2119 statement in his brief explaining why this Court should consider a discretionary challenge to his sentence. Grove served his entire two year sentence.

*Third revocation.* At the conclusion of this term of imprisonment, Grove was detained for a third time for failure to provide a suitable home plan. On October 9, 2013, the trial court again revoked his probation because of his failure to obtain an approved home.

- 4 -

The October 9, 2013 sentencing order stated:

The Defendant is sentenced on Count No. 1 to a period of incarceration in a State Correctional Institution of not less than one hundred fifty-three (153) days nor more than twenty-four (24) months. The Defendant shall receive credit for time served from May 19, 2013, to today's date, that sentence to be followed by a period of eighty-six (86) months of consecutive probation.

*While under supervision*, the Defendant shall be subject to the terms and conditions *of supervision* as set forth in Judicial Administration Order AD-0000001 of 2007 and the Standard Special Conditions for Sex Offenders as set forth by the Pennsylvania Board of Probation and Parole which were effective in March 2012 and attached hereto as Appendix 1. In addition, the Defendant shall be subject to the Optional Special Conditions for Sex Offenders established by the Pennsylvania Board of Probation and Parole with an effective date of March 2012 and attached hereto as Appendix 2.

Order, 10/9/13 (emphasis added). Appended to the sentencing order were the Probation and Parole Board's Standard Special Conditions For Sex Offenders, which stated in relevant part:

1. You must obtain a sex offender evaluation from a sex offender treatment provider who is approved by *probation/parole supervision staff*. You must comply with and successfully complete all treatment recommendations including polygraph examinations, resulting from this evaluation. You must pay the cost of the evaluation, polygraph(s) and treatment. You must also provide written authorization for release of confidential information between your sex offender treatment provider and the Pennsylvania Board of Probation and Parole.

Special Conditions For Sex Offenders (emphasis added). Notably, this condition does not authorize the trial court or the Department of Corrections ("DOC") to select the sex offender evaluator; only the probation/parole supervision staff may select the evaluator.

*Fourth revocation (the revocation presently in question).* On May 18, 2015, the imprisonment portion of Grove's sentence concluded, and the probationary period began. Instead of releasing Grove, law enforcement officials transported him from state prison to county prison. On May 29, 2015, the Commonwealth moved to revoke Grove's probation, again alleging that Grove did not have a suitable home plan.

On August 3, 2015, the trial court held a revocation hearing on the Commonwealth's motion. Grove's attorney informed the trial court that Grove had finally found housing with the Just for Jesus Ministry in Jefferson County, Pennsylvania. At this moment, the Commonwealth claimed - for the first time - that Grove violated the October 9, 2013 sentencing order by failing to "seek and complete" sex offender treatment while in jail and "[taking] himself out of … sex offender treatment programs." N.T., 8/3/15, at 4. The trial court responded: "Well, that changes the dynamics of this case dramatically. The last time we were here, I was told the sole reason he wasn't paroled was he didn't have a house. That's not the case, obviously." *Id*. at 4.

Later in the hearing, the following took place:

THE COURT: Well, I would note in my sentence of October [9th] - and this may shorten this entire process - 'while *under supervision*, the Defendant shall be subject to the terms and conditions of supervision as set forth in Judicial Administration Order AD-01 of 2007, and the standard special conditions for sex offenders as set forth by the Pennsylvania Board of Probation and Parole which were effective March 2012 and attached hereto as Appendix 1. Condition No. 1, *you must obtain a sex offender*

- 6 -

*evaluation from a sex offender treatment provider who is approved by probation and parole supervision staff*. You must comply with and successfully complete all treatment recommendations.' It would seem to me that the Department of Corrections' assessment would be an evaluation from a sex offender treatment provider and the recommendation is to complete -- successfully complete the treatment program. If he has refused to do that, he has clearly violated the condition of the Court. That is a ground[] for revocation and resentencing because he has chosen not to do that. It's not a matter of funding, it's not a matter of no one wanting him here, it's not a matter of putting him back on the street. So if in his entire time that he is in the state prison he has refused to complete the programming, that is an obvious violation which he had total control of to vindicate the authority of the Court which required that, incarceration - or revocation and reincarceration would be appropriate to complete the sex offender program which he has not done.

Do we have an answer to the question? Mr. Ulmer, do you want to ask your client whether I am going to inconvenience the Court and everyone else one more time by continuing this matter to get an answer to that question or is he going to make this a little easier and allow him to get back to state prison to complete the recommended and required treatment which would then allow him to go to a halfway house and may solve the entire dilemma with which he is faced?

DEFENSE COUNSEL: Your Honor, I don't even need to ask my client. On his behalf I'm going to say, yes, we are going to inconvenience the Court. With all due respect, I believe what you were just referencing, and this may put us in a Catch-22, was prefaced with, 'while under supervision'. *My client wasn't just under supervision at the time, he was still incarcerated, so, therefore, he did not violate the term of his supervision; in addition to which, that has not been pled as a violation here today*; and finally, and certainly based off of what's here today, I don't think the defense would be willing to make that concession without further investigation. And, no, we don't like the idea of inconveniencing the Court. And practically speaking, we understand the concerns of the Court and the Commonwealth, but I'm not going to push my client out an open window.

> THE COURT: *It's my word 'supervision'. It does not say probation or parole. He's under supervision while he's in the state system*. He could have obtained the evaluation while in the state system and complied with the treatment. My word, not necessarily meaning - *if I wanted to say probation and parole, I would have said, 'While under probation and parole'.*[2] I said, while under supervision. Supervision of the Department of Corrections, the Board of Probation or Parole, it doesn't matter whom he's under the supervision of. So let's get that on the record right now. It's my word. It's my definition, not somebody else's, including the legislature.

N.T., 8/3/15, at 34-36 (emphasis added). The trial court continued revocation proceedings to a later date while stating: "I will be curious to know whether the defendant has completed any sex offender programming while in the state system." *Id*. at 41.

On August 13, 2015, the Commonwealth filed an amended motion to revoke probation/parole, this time alleging that Grove had mandatory sexual offender treatment requirements under the February 18, 2011, July 26, 2011 and October 9, 2013 orders but failed to complete them while incarcerated. Grove's failure to obtain treatment, the Commonwealth continued, made it likely that he would violate his probationary conditions on the street.

---

[2] The trial court was incorrect. As stated above, Condition 1 of the Special Conditions For Sex Offenders, which the court incorporated into its October 9, 2013 order, states that Grove must obtain a sex offender evaluation by a provider who is approved by "parole and probation supervision staff".

On September 15, 2015, the trial court held another revocation hearing. At the outset, the trial court observed with regard to its October 9, 2013 sentencing order:

> I'm just saying: 'The Court entered sentencing' - Paragraph 3: 'The Court entered sentencing orders making sexual offender treatment mandatory during his periods of probation supervision,' well, that and - I didn't say probation. It was supervision. Paragraph 2 of this Court's February 18th, 2011 sentence says: The Defendant shall successfully enroll in, participate in, and complete a program for sex offenders approved by the Pennsylvania Board of Probation and Parole. That was required back in 2011.

N.T., 9/15/15, at 7. David Gorman, a psychological services specialist at SCI Waymart, a state prison facility, testified that Grove refused to attend sex offender treatment while he was an inmate at SCI Waymart in 2014. *Id*. at 10. Gorman testified: "[A]ll our DOC programming is voluntary. There are consequences for not participating. It is unlikely an inmate will be granted parole if he doesn't participate in programming; but other than that, there's no consequences." *Id*. at 20.

The trial court declined to revoke probation for the original alleged violation, failure to have a home plan. The trial court considered the Commonwealth's motion on this subject as seeking an "anticipatory violation of probation. I am not persuaded that we can revoke someone's probation because of what we think they may or may not do once they are placed on probation … The defendant will not be revoked on any anticipatory violation for not having a home plan…" *Id*. at 45.

- 9 -

Instead, the trial court stated that Grove violated the October 9, 2013 sentencing order by refusing to attend sex offender treatment while serving the imprisonment portion of his sentence:

> This is a situation where the Defendant was facing a split sentence, the first period of incarceration where he was given the opportunity for the treatment was to be followed by probation. This is not an anticipatory violation. This was a violation that occurred prior to that aspect of the sentence taking effect. The law is clear, a defendant can violate a condition of probation prior to that aspect of the sentence taking effect. That is exactly what happened here. The Defendant was required to complete sex offender treatment and participate in that. He refused multiple times. At that point, he violated the conditions of his probation even though that aspect of the sentence has not been in place – or had not been in place.

*Id*. at 46-47.

The trial court sentenced Grove to 4-86 months in state prison. *Id*. at 48. This appeal followed.[3] Grove complied with Pa.R.A.P. 1925. The trial

_____

[3] On September 25, 2015, Grove filed post-sentence motions seeking reconsideration of his sentence. On October 15, 2015, Grove appealed to this Court. This appeal was premature, because the trial court had not yet ruled on Grove's post-sentence motions. *Commonwealth v. Claffey*, 80 A.3d 780, 783 (Pa.Super.2013).

We have remedied this problem in the following manner. Pa.R.Crim.P. 720 provides, with one exception not relevant here, that "if the judge fails to decide the motion within 120 days … the motion shall be deemed denied by operation of law." Pa.R.Crim.P. 720(B)(3)(b). On June 3, 2016, we directed the trial court to enter an order denying Grove's post-sentence motions by operation of law. On June 7, 2016, the trial court entered this order on its docket, thus perfecting our jurisdiction over this appeal on that date. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof").

court did not file a formal opinion but simply entered an order referring us to the reasons it gave during the September 15, 2015 hearing for revoking Grove's probation.

Grove raises four issues in this appeal:

1. Were [Grove]'s procedural due process rights violated when the Court sentenced him for an alleged violation which was not raised by the Commonwealth in either of its two Motions to Revoke?

2. Did [Grove] violate any existing probation order where there was no order requiring him to complete sexual offender's programming while in the State Prison[?]

3. Should [Grove] have been sentenced to a period of total confinement following a probation revocation where the conditions permitting a court to order total confinement, as contained in [] 42 Pa.C.S. [§] 9771(c), had not been met?

4. Should Grove have been given credit in his sentencing order for the time he spent detained from May 19, 2015 until his sentence of September 15, 2015 pursuant to 42 Pa.C.S. [§] 9760?

Brief For Appellant, at 3. The second issue is dispositive.

In an appeal from a sentence imposed following the revocation of probation, "[o]ur review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing." *Commonwealth v. Fish*, 752 A.2d 921, 923 (Pa.Super.2000) (citing 42 Pa.C.S. § 9771(b)). Revocation of a probationary sentence is entrusted to the sound discretion of the trial court, and we will

- 11 -

not disturb that court's decision in the absence of an error of law or an abuse of discretion. ***Commonwealth v. Smith***, 669 A.2d 1008, 1011 (Pa.Super.1996).

A violation of probation merits revocation when the Commonwealth proves by a preponderance of the evidence that the probationer's conduct violated the terms and conditions of his probation, and that probation has proven an ineffective rehabilitation tool incapable of deterring him from future antisocial conduct. ***Commonwealth v. Sims***, 770 A.2d 346, 350 (Pa.Super.2001).

Since 2002, Grove has been in jail for all but 2 days (the brief period following his release in 2010). None of his sentencing orders stated that he was required to undergo sex offender treatment during "imprisonment"; they only required sex offender treatment while on "supervision".

The trial court construed the term "supervision" in its October 9, 2013 order to mean that the court itself was Grove's supervisor while Grove was in prison. The trial court determined that Grove was required to obtain sex offender treatment while on the court's "supervision", i.e, while in prison, and that Grove's failure to do so constituted a violation of probation. We do not agree with this interpretation of the order. Imprisonment and supervision are separate and distinct levels of restriction. Imprisonment, the more restrictive of the two, occurs when the defendant is a prison inmate. Supervision, the lesser restriction, occurs when the individual is released

into the community and his daily activities are supervised by a parole and probation officer in a manner that protects society. The natural meaning of "supervision" is that it would begin *after* Grove's release from prison into the community. "Supervision" did not take place during Grove's imprisonment, as the trial court contends. Since Grove was never out of jail after October 9, 2013, it was impossible from October 9, 2013 onward for him to violate the term of "supervision" requiring sex offender treatment.

It is instructive to examine the language in the court's 2011 sentencing orders, the same orders that the trial court referenced in the course of interpreting the October 9, 2013 order. N.T., 9/15/15, at 7 (court's observation that its 2011 orders mandated sex offender treatment). The February 18, 2011 sentencing order states that following Grove's term of imprisonment, there was to be:

> one hundred thirty-four (134) months of consecutive probation to be *supervised* by the Pennsylvania State Board of Probation and Parole. The Defendant shall be subject to such terms and conditions of *supervision* as set forth in Judicial Administrative Order AD-0000001-2007 and such other terms and conditions as may reasonably be imposed by the Pennsylvania Board of Probation and Parole or such other appropriate *supervising* authority which shall include, but not be limited to, the following [11 conditions]: … 2. The Defendant shall successfully enroll in, participate in, and complete a program for sex offenders approved by the Pennsylvania Board of Probation and Parole.

Order, 2/18/11 (emphasis added). This language clearly moors "supervision" and sex offender treatment to Grove's probationary period, not to his term of imprisonment.

Similarly, in Grove's July 26, 2011 sentencing order, paragraph 2 states that Grove is sentenced to 110 months' probation after a term of imprisonment. Paragraph 3 states that

> the *period of probation* is to be specially *supervised* by the Pennsylvania State Board of Probation and Parole. *While on probation*, he will be *subject to the conditions of probation* set forth in a Judicial Administration Order filed to CP-60-AD-0000001 of 2007. He will also be subject to a condition that he not reside in any residence where any minors reside and that he not be left in the company of any minors by anyone.

Order, 7/26/11 (emphasis added). Paragraph 4 continues that "in addition to the conditions of *supervision* imposed above, the Defendant will be subject to the conditions of *supervision* in Numbered Paragraphs 1 through 11 in the Court's Order and Sentence of February 18, 2011." ***Id***. (emphasis added). Once again, "supervision" and sex offender treatment are tethered to Grove's probation, not his term of imprisonment.

The October 9, 2013 order again imposes probation consecutive to imprisonment, stating:

> The Defendant is sentenced on Count No. 1 to a period of incarceration in a State Correctional Institution of not less than one hundred fifty-three (153) days nor more than twenty-four (24) months. The Defendant shall receive credit for time served from May 19, 2013, to today's date, that sentence to be followed by a period of eighty-six (86) months of consecutive probation.
>
> *While under supervision*, the Defendant shall be subject to the *terms and conditions of supervision as set forth in Judicial Administration Order AD-0000001 of 2007 and the Standard Special Conditions for Sex Offenders* as set forth by the Pennsylvania Board of Probation and Parole which were effective in March 2012 and attached hereto as Appendix 1.

Order, 10/19/13 (emphasis added). "While under supervision" immediately follows "eighty-six (86) months of consecutive probation" imposed in the preceding paragraph. Moreover, "terms and conditions of supervision as set forth in Judicial Administration Order AD-0000001 of 2007" is the same condition that the trial court imposed in the *probationary* portions of Grove's February 18, 2011 and July 26, 2011 revocation orders. Finally, the Standard Special Conditions for Sex Offenders[4] requires sex offender treatment under conditions prescribed by the Pennsylvania Board of Probation and Parole. Standard Special Condition 1 requires a sex offender evaluation by a provider approved by "probation/parole supervision staff." Nothing in the Standard Special Conditions vests authority in the trial court. Nothing in the Standard Special Conditions requires sex offender treatment in prison; they do not take effect until the defendant's release from prison. Thus, like Grove's prior sentencing orders, the October 9, 2013 order demonstrates that sex offender treatment was a condition of probation that Grove only had to satisfy after his release, not a condition that he had to fulfill in prison. The trial court's ruling to the contrary was erroneous.

Compounding this error was the trial court's fictitious assertion that the court itself was Grove's "supervisor" during his imprisonment. There is simply no authority for the proposition that the trial court is an inmate's

---

[4] ***See*** page 5, ***supra***.

"supervisor" during his imprisonment. The DOC is the only supervisor of prison inmates' daily life. Outside of jail, probation officers are the only supervisors of state parolees' or probationers' daily lives. Because Grove's only supervisor in prison was the DOC, the trial court erred by deeming itself Grove's "supervisor" in prison and using this determination to revoke Grove's probation before it began.

Although some decisions authorize the trial court to revoke probation before the probationary term has begun, these decisions are distinguishable from Grove's case. In multiple cases, this Court has held that the court can revoke probation when the defendant commits new crimes before the probationary term begins.[5] In another case, this Court upheld revocation of probation when the defendant violated a condition of work release during the

_____

[5] *See, e.g., Commonwealth v. Wendowski*, 420 A.2d 628 (Pa.Super.1980) (when defendant pled guilty to receiving stolen property before another judge, Judge Carson revoked probation, even though defendant had not completed sentences before other judges; on appeal, Judge Carson's revocation order affirmed on ground that probation was a privilege instead of a contract, thus commission of new offenses warranted revocation of privilege of probation because it showed that defendant "is unworthy of probation and that the granting of the same would not be in subservience to the ends of justice and the best interests of the public"); *Commonwealth v. Dickens*, 475 A.2d 141 (Pa.Super.1984) (same result where defendant committed new crimes of assault, reckless endangerment and endangering welfare of children before beginning probationary term for voluntary manslaughter); *Commonwealth v. Ware*, 737 A.2d 251 (Pa.Super.1999) (same result where defendant committed new retail theft before beginning probationary term for prior retail theft).

imprisonment portion of his sentence by consuming alcohol. ***Commonwealth v. Hoover***, 909 A.2d 321 (Pa.Super.2006). We reasoned:

> Although Appellant did not, strictly speaking, violate the law by becoming intoxicated, he clearly violated the terms of his work release and demonstrated to the court that he is unworthy of probation. The record reflects that the trial judge was cognizant of Appellant's extensive history of alcohol abuse, numerous prior DUI convictions, and apparent inability to control his addiction to alcohol. The court concluded that, in light of Appellant's behavior, Appellant would be difficult to supervise while on probation and posed a risk to the community in that he was likely to commit new crimes.

*Id*. at 324. Revocation of probation in advance of the probationary term was permissible in these cases because it was foreseeable to the defendant that new crimes or violations of work release terms would result in sanctions. Here, in contrast, Grove did not commit any new crime in prison or violate express terms of work release. Indeed, Grove did not violate anything at all. The October 9, 2013 order only required him to obtain sex offender treatment after his release from jail. It did not require him to obtain sex offender treatment in prison as well.[6]

---

[6] Tellingly, the lone DOC witness at Grove's revocation hearing, Mr. Gorman, testified that failure to attend sex offender treatment in prison does not result in sanctions against the prisoner, because the sex offender treatment program is voluntary. N.T., 9/15/15 at 20 ("[A]ll our DOC programming is voluntary. There are consequences for not participating. It is unlikely an inmate will be granted parole if he doesn't participate in programming; but other than that, there's no consequences").

For these reasons, we resolve the second issue in Grove's appeal by concluding that the trial court erred in revoking his probation. Given this decision, we need not address Grove's first, third or fourth issues.

Judgment of sentence reversed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/2016