369 A.2d 300
**COMMONWEALTH of Pennsylvania**
**v.**
**Robert SMYTHE, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 11, 1975.

Decided Nov. 22, 1976.

76

John M. Gallagher, Jr., Upper Darby, for appellant.

Ralph B. D'Iorio, Assistant District Attorney, Media, for appellee.

Before WATKINS, President Judge, and CERCONE, PRICE and VAN der VOORT, JJ.

CERCONE, Judge:

In the early morning of February 19, 1973, appellant, a 26-year-old detective-patrolman with four years service on the Darby Borough Police Department, went to the S.

I.M.S. Club to assist in the service of various purported warrants [1] charging Anthony Raffaele and six others with selling liquor after hours. Upon arriving at the club, appellant and several other officers entered and began serving these warrants and making arrests. When appellant attempted to serve one such warrant upon Raffaele a fight took place and as a result Raffaele was hospitalized. Raffaele subsequently filed criminal complaints against appellant and two other officers of the Darby Borough Police Department. The three officers were indicted by the grand jury on charges of assault and battery, aggravated assault and battery and conspiracy,[2] and in a consolidated trial the jury acquitted appellant's fellow officers of all charges but found appellant guilty of assault and battery and conspiracy. Appellant's post-verdict motions were denied, and he was sentenced to serve one year on probation and ordered to pay a fine of $750. He now appeals to this court.

The first matter to be considered is appellant's contention that his conviction for conspiracy should be vacated because his alleged co-conspirators were acquitted. In support of this position appellant points to the case of *Commonwealth v. Salerno,* 179 Pa.Super. 13, 16–17, 116 A.2d 87, 89 (1955) which states:

"In a charge for conspiracy the Commonwealth must prove that two or more are guilty. *Commonwealth v. Faulknier,* 89 Pa.Super. 454, 459. Where, therefore, there are only two conspirators and one is acquitted, the other cannot, of course, be tried or convicted." Accord *Commonwealth v. Turchetto,* 193 Pa.Super. 376, 378, 165 A.2d 118 (1960).

1. As will be discussed at some length below, these warrants were in fact invalid.

2. Act of June 24, 1939, P.L. 872, §§ 708, 709 and 302, 18 P.S. §§ 4708, 4709 and 4302.

This rule, however, is not without an exception. The case of *Commonwealth v. Avrach*, 110 Pa.Super. 438, 441, 168 A. 531 (1933) states:

"Where an indictment charges a conspiracy among specifically named defendants and other persons unknown to the grand jury, and there is at the trial proof of a conspiracy with the persons who are unknown, there is an exception to the rule that a jury may not convict one of two or more defendants and acquit the other or others."

In the instant case the bill of indictment returned against appellant states that appellant had conspired with his two named co-defendants "and with divers other evil disposed persons whose names are to this Grand Inquest as yet unknown." Therefore, the question with which we are faced is whether there was proof at trial of a conspiracy with unknown persons. In answering this question we are bound to view the evidence and all reasonable inferences therefrom in the light most favorable to the Commonwealth. *Commonwealth v. Tabb*, 417 Pa. 13, 207 A.2d 884 (1965).

At trial Raffaele testified that in addition to appellant and his two named co-defendants, he was beaten by two other officers. This testimony was corroborated by several other witnesses. On the basis of this testimony the lower court held that there was sufficient evidence on the record upon which the jury could find a conspiracy. We disagree. While participation of two or more persons is an element of conspiracy, "[t]he heart of the offense is a common understanding or agreement. . . . Even giving the Commonwealth the benefit of all favorable testimony and all reasonable inferences therefrom, the evidence fails to show any understanding or agreement." *Commonwealth v. Santana*, 216 Pa.Super. 183, 187, 264 A.2d 724, 726 (1970). Evidence of an understanding or agreement with unknown persons was not shown at trial in the instant case and, therefore, we have

no alternative but to vacate appellant's conviction for conspiracy.

■ Appellant next raises several issues in support of a new trial as to the assault and battery charge. Appellant's first contention is that he had a right, for purposes of cross-examination, to examine written statements of Commonwealth witnesses which were taken during the course of an investigation by the Federal Bureau of Investigation. The F.B.I. had conducted their investigation as a result of a civil rights claim instituted by Raffaele. In the trial of the instant case, appellant subpoenaed Robert E. Curran, United States Attorney, for production of the statements in question. At a conference Kenneth Richey, Assistant United States Attorney, who appeared on behalf of Mr. Curran, read into the record the following telegram from J. Stanley Pottinger, Assistant Attorney General of the Civil Rights Division of the Department of Justice:

"Pursuant to conversation between you and Frank Allen of this Division, March 26, 1974, this is to advise that I do not authorize release of files and materials assembled by the F.B.I. in connection with the captioned civil rights matter.

"Please respectfully advise the Court of my position in this matter and request that the subpoena be withdrawn or quashed.

"In the event the subpoena is continued in effect, please proceed in accordance with 28 CFR 16.21 et seq." [3]

In response to this telegram the trial court, over objection by appellant's counsel, quashed the subpoena.

In support of his position that he was entitled to review the statements of Commonwealth witnesses in the

---

**3.** 28 CFR 16.21 *et seq.* establishes the procedure to be followed by employees of the Justice Department when a subpoena is issued demanding the production of materials.

F.B.I.'s possession, appellant cites the case of *Commonwealth v. Smith,* 417 Pa. 321, 208 A.2d 219 (1965) which is strikingly similar to the instant case. Both cases involve the following: assault and battery charges arising out of a fight between a police officer and a citizen, which occurred when the officer attempted to arrest the citizen; the filing of a civil rights action which was investigated by the F.B.I. and led to the F.B.I.'s taking statements of Commonwealth witnesses; service of a subpoena duces tecum to gain access to F.B.I. files which contained the witnesses' statements which were desired for impeachment purposes; and, a trial judge's granting of the Justice Department's motion to quash leading to an appeal to this court. After consideration of the *Smith* case this court affirmed. See *Commonwealth v. Smith,* 198 Pa.Super. 499, 182 A.2d 104 (1962). An appeal was then taken to our Supreme Court which also affirmed. See *Commonwealth v. Smith,* 412 Pa. 1, 192 A. 2d 671 (1963). An appeal was then taken to the United States Supreme Court. That court contacted the Department of Justice and was informed that the Department of Justice, while not willing to disclose its entire file, would comply with a specific request for the witnesses' statements. Accordingly, the case was remanded to our Supreme Court. See *Smith v. Pennsylvania,* 376 U.S. 354, 84 S.Ct. 763, 11 L.Ed.2d 753 (1964). Our Supreme Court then remanded and ordered the trial court to authorize the issuance of a subpoena duces tecum limited to the witnesses' statements. See *Commonwealth v. Smith,* 417 Pa. 321, 208 A.2d 219 (1965).

While the *Smith* case is very similar to the instant case, it is different in one critical respect. In *Smith* the Pennsylvania courts ordered the subpoena to be issued and a new trial held only after it had learned that the Department of Justice was willing to comply with a specific demand from the court to supply the witnesses' statements. In the instant case the Department of Jus-

tice has not shown that same cooperativeness. Accordingly, the *Smith* case does not under the facts of this case mandate a new trial. Accord *Commonwealth v. Hicks*, 228 Pa.Super. 76, 80, 324 A.2d 397 (1974). Since appellant has shown no authority which would empower a state court to subpoena the documents in question from the Department of Justice when that Department is unwilling to turn over such documents, we do not now attempt to exercise such authority. As was stated by Justice Roberts in his Concurring and Dissenting opinion in the *Smith* case:

> "I also have little doubt that, even beyond questions of privilege, the federal government could refuse to reveal, in state court proceedings, material in its possession. Out of comity, no doubt, these instances may be seldom, but the fact—legitimate power to refuse—remains." [4]

Appellant's next argument in support of a new trial is that he was prejudiced by the following portion of the trial court's charge to the jury:

> "These police officers thought they had Warrants. In fact, they did not. It is not denied that the papers are not Warrants because they were never issued by the Magistrate. They thought they had Warrants. They believed that they had them. The Commonwealth contends that they should have known that they did not have them and by going in there and doing what they did, they should have known they were doing something unlawful under the Statute. That is what the Commonwealth contends. You are going to make the final judgment. So the Commonwealth contends that these three defendants, at least knew or should have known, they were from the Borough of Darby and they were familiar with the entire situation, and when

4. Four of the six Justices who participated in the consideration and decision of the *Smith Case* on remand agreed with this statement of the law.

they got a Warrant they should have examined it to see that they had legal authority to do what they set out to do."

Appellant contends that the above charge instructed the jury to judge him by negligence rather than criminal standards. He argues that the jury's verdict could have been based upon a finding that despite his belief that the warrants he served were valid he, nevertheless, should have known that they were defective. In support of this argument appellant points to the case of *Commonwealth v. McFarland,* 226 Pa.Super. 138, 140, 308 A.2d 126 (1973) which states:

"In a criminal case, with some exceptions not here pertinent, guilt is not objective but personal; the question is not what a reasonable man would have known but what the defendant knew; and the only pertinence in asking what a reasonable man would have known is in considering whether, because a reasonable man would have known it, the defendant did."

In *McFarland* the crime in question was receiving stolen property and the defendant's knowledge of whether the property was stolen was an essential element. Accordingly, the court in *McFarland* committed reversible error when it instructed the jury that it could find the defendant guilty "[i]f the Commonwealth has shown a collection of circumstances which would have led a reasonably prudent man to know that the goods had been stolen."

In the instant case a critical question is whether appellant was privileged to exercise reasonable force in arresting Raffaele. Beyond question, had a valid warrant existed such a privilege would have existed. However, as the above-quoted portion of the court's charge indicates, the evidence indisputably established that appellant did not have a valid warrant. Furthermore, the evidence sufficiently established for the jury's consideration that, had appellant inspected the warrant, he would have known it was invalid. Accordingly, the question we face

herein is whether a police officer on February 19, 1973 was privileged to use reasonable force to effect an arrest based on a warrant which he did not *actually know* was invalid,[5] but which he would have discovered was invalid had he inspected it.

This question is one of first impression in the courts of this Commonwealth. We have neither Pennsylvania case law to guide us, nor statutory law to compel us to any particular conclusion. However, we do find strong and definite guidance in the recent Crimes Code which, although passed on December 6, 1972, was not made effective until June 6, 1973. Although in the strict sense of the term, the Code is not binding authority, it clearly demonstrates the legislative determination of the public policy in this Commonwealth at the time of the incident here in question. In the absence of precedent, the courts should adopt the rule which agrees with the habits, customs and public policy of the Commonwealth. See 21 C. J.S. Courts § 181, at p. 292; 20 Am.Jur.2d, Courts § 203. Specifically, Section 508(a)(2) of the Crimes Code answers the question as follows:

> "A peace officer making an arrest pursuant to an invalid warrant is justified in the use of any force which he would be justified in using if the warrant were valid, unless he knows that the warrant is invalid." [6]

It is obvious from Section 508(a)(2) that a police officer's privilege to use reasonable force to effect an arrest is not conditioned by a requirement that he first inspect the warrant to determine whether it is valid on its face. The officer will only be denied that privilege if he actually knows the warrant is defective. Hence, the trial court erred when it instructed the jury that it could find ap-

5. We hasten to add that we express no opinion on whether the jury could have determined on the evidence before it whether appellant did in fact know that the warrant was invalid.

6. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 508.

pellant guilty of assault and battery if appellant should have known the warrant was defective.[7]

Judgment of sentence for conspiracy is vacated; judgment of sentence for assault and battery is reversed and remanded for a new trial.

JACOBS, HOFFMAN and SPAETH, JJ., absent.

7. For guidance on its charge upon retrial of this case the court might refer to Pennsylvania Standard Jury Instructions, Criminal Subcommittee Drafts, prepared by Criminal Instructions Sub-committee of the Pennsylvania Supreme Court Committee for Proposed Standard Jury Instructions, Instruction No. 9.508c at p. 195, which provides:

"The defendant was making an arrest with a warrant which I instruct you was invalid as a matter of law. However, the fact that the warrant was legally invalid does not alter or nullify the principle I have just given you unless the defendant used force against Raffaele with actual knowledge that the arrest warrant was invalid. In other words, if the evidence convinces you beyond a reasonable doubt that the defendant knew that the warrant was invalid then his use of force was not justified and you should find the defendant guilty even though you are not otherwise convinced beyond a reasonable doubt that he unreasonably believed that the use of force was necessary."