J-S37022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID JAMAL ADAMS, | |
| Appellant | No. 1442 WDA 2015 |

Appeal from the Judgment of Sentence September 3, 2015
In the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0000290-2015, CP-07-CR-0000315-2015, CP-07-CR-0000316-2015, CP-07-CR-0001554-2009

BEFORE: GANTMAN, P.J., SHOGAN and LAZARUS, JJ.

MEMORANDUM BY SHOGAN, J.: **FILED JULY 26, 2016**

Appellant, David Jamal Adams, appeals from the judgments of sentence imposed on September 3, 2015, following his conviction of several drug-related crimes and the subsequent revocation of his probation. We affirm.

While on probation from a 2009 conviction for one count of firearms not to be carried without a license, 18 Pa.C.S. § 6106, Appellant was charged with two counts each of possession with intent to deliver, 35 P.S. § 780-113(a)(30), and criminal use of communication facility, 18 Pa.C.S. § 7512(a); and one count each of criminal conspiracy, 18 Pa.C.S. § 903(a)(1), escape, 18 Pa.C.S. § 5121(a), and flight to avoid apprehension, 18 Pa.C.S. § 5126(a). We summarize the facts of the crimes as follows.

On August 1, 2013, Sergeant Benjamin Jones, then in charge of the Narcotics Division of the Altoona Police Department and a member of the West 4 Drug Task Force,[1] and Altoona Police Sergeant Christopher Moser organized a controlled buy operation.  N.T. (Day One), 6/22/15, at 42–43.  Sergeant Moser utilized a confidential informant ("C.I.") in the operation.  *Id.* at 96; N.T. (Day Two), 6/23/15, at 27.  The C.I. told police that she knew of a "target"[2] identified by his street names of "Dolla" and "H" and also by his birth name, David Adams.  N.T. (Day One), 6/22/15, at 44.

Prior to the buy, Altoona Police Corporal Nichole Douglas strip-searched the C.I., and Sergeant Jones searched the C.I.'s car.  N.T. (Day Two), 6/23/15, at 34.  At 9:00 p.m., the sergeants followed the C.I. to the area of 14th Avenue and 16th Street in Altoona, near the No. 1 Fire Station, to conduct the buy.  N.T. (Day One), 6/22/15, at 44.  The C.I. had previously contacted Appellant by telephone to arrange the time and location for the buy.  *Id.* at 48.  The police gave the C.I. $200 to buy an "eight-ball"[3] of cocaine.  *Id.* at 49.  Once the police and the C.I. arrived at the location, Sergeant Jones positioned himself on the roof of the fire station.  *Id.* at 50–

_____

[1]  The Pre-Sentence Investigation ("PSI") Report referenced the task force as the West Drug Task Force. PSI Report, 8/20/15, at 2.

[2]  A "target" is a person identified by the C.I. as someone from whom the C.I. can purchase narcotics.  N.T. (Day One), 6/22/15, at 44.

[3]  An eight-ball, equal to about 3.5 grams or 1/8 of an ounce, of cocaine is commonly referred to as a "ball" or a "B."  N.T. (Day Two), 6/23/15, at 59.

51. Sergeant Jones observed Appellant driving a light-colored Dodge. N.T. (Day One), 6/22/15, at 52. Sergeant Jones witnessed the motions of an exchange between the C.I. and Appellant through the zoom feature of his digital camera. *Id.*

On August 8, 2013, Altoona Police Patrolman Andrew Crist and Sergeant Moser arranged for another controlled buy with the C.I. N.T. (Day One), 6/22/15, at 105. The C.I. organized another meeting with Appellant to purchase cocaine. *Id.* at 105. This time, Patrolman Crist and Sergeant Moser drove behind the C.I. to the Monkey Wharf, the bar at which Appellant elected to meet the C.I. *Id*. at 146. While on the road, Patrolman Crist and Sergeant Moser noticed Appellant driving the light-colored Dodge directly behind them. N.T. (Day Two), 6/23/15, at 51; N.T. (Day One), 6/22/15, at 147. An unidentified black male passenger was also in the car with Appellant. N.T. (Day One), 6/22/15, at 147. Upon reaching the Monkey Wharf, the passenger exited the vehicle and entered the C.I.'s car, while Appellant remained in the Dodge. *Id.* at 148. The unidentified male passenger remained in the C.I.'s vehicle for about one minute, then returned to Appellant's car, and they left the area. *Id.*

Before and after both the August 1, 2013, and the August 8, 2013 buys, Sergeant Jones searched the C.I.'s vehicle, and Corporal Douglas strip-searched the C.I. N.T. (Day One), 6/22/15, at 103–104. The officers did not find any contraband on the C.I.'s person or in her car during any of

the searches. *Id*. After both buys, the C.I. gave police baggies containing a white powdery substance, and police placed them into evidence envelopes. *Id*. at 182–184. Keri Harkleroad, a forensic scientist in the drug identification section of the Pennsylvania State Police Greensburg Regional Laboratory, testified that her tests of the substances confirmed that the white powder was, in fact, cocaine. N.T. (Day Two), 6/23/15, at 16–17.

On the evening of January 16, 2014, and into the early morning of January 17, 2014, Altoona Police Deputy Benjamin Johnson and Altoona Police Patrolman Christy Heck arranged an undercover operation to arrest Appellant on outstanding felony drug-delivery warrants in connection with the drug transactions on August 1, 2013, and August 8, 2013. N.T. (Day Three), 6/24/15, at 3. In order to contact Appellant, Deputy Johnson established a Facebook account for a fictitious woman named "Natalie" and asked Patrolman Heck to pose as "Natalie." *Id*. After multiple phone conversations, Appellant asked "Natalie" for a ride, and they decided that "Natalie" would meet Appellant at the intersection of Second Avenue and Lloyd Street. *Id.* at 5. Patrolman Heck waited for Appellant in an unmarked car with the doors locked. N.T. (Day Three), 6/24/15, at 5–6, 17. Patrolman Heck did not see Appellant approach her vehicle due to the angle Appellant traversed, and was surprised by Appellant when he attempted to enter her vehicle. *Id.* at 10. Patrolman Heck exited her car, pointed her service weapon at Appellant and yelled, "[P]olice; show me your hands," to

J-S37022-16

which Appellant responded by fleeing. *Id.* at 11, 20. Patrolman Heck holstered her weapon and gave chase. *Id.* at 20. Police eventually apprehended Appellant after a three-to-four-minute chase. *Id*. at 23.

We summarize the procedural history of the case as follows. After a three-day jury trial, Appellant was found guilty of all charges on June 24, 2015. N.T. (Day Three), 6/24/15, at 108. On September 3, 2015, the trial court sentenced Appellant to a term of imprisonment of sixty-eight months to 136 months in a state correctional institution. The trial court also conducted a *Gagnon II* probation revocation hearing on the same date.[4] As

_____

[4] In *Commonwealth v. Heilman*, 876 A.2d 1021 (Pa. Super. 2005), we summarized the probation revocation process as follows:

In *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the United States Supreme Court held that a defendant accused of violating the terms of his probation is entitled to two hearings prior to formal revocation and resentencing.

When a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a *Gagnon I* hearing, that probable cause exists to believe that a violation has been committed. Where a finding of probable cause is made, a second, more comprehensive hearing, a *Gagnon II* hearing, is required before a final revocation decision can be made.

*Commonwealth v. Sims*, 770 A.2d 346, 349 (Pa. Super. 2001). The *Gagnon II* hearing requires two inquiries: (1) whether the probationer has in fact violated one of the conditions of his probation, and, if so, (2) should the probationer be recommitted to prison or should other steps be taken to

*(Footnote Continued Next Page)*

- 5 -

a result of Appellant's probation violations, the trial court imposed a consecutive sentence of twenty-four months to forty-eight months of imprisonment. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following questions for our review:

I.      Was there . . . insufficient evidence to sustain the jury's finding of guilt with respect to each count of which [Appellant] was convicted?

        a.   Did the Commonwealth fail to establish by the evidence that there was a conspiracy at Trial Court Docket number 316 CR 2015?

        b.   Did the Commonwealth fail to establish that [Appellant] had been placed in official detention at Trial Court Docket number 290 CR 2015?

II.     Did the trial court err in its discretionary aspects of sentencing at 290 CR 2015, 315 CR 2015, 316 CR 2015 and 1554 CR 2009?

III.    Was [Appellant] denied his right to due process under the United States Constitution and Pennsylvania Constitution at case numbers 315 CR 2015 and 316 CR 2015 because of pre-arrest delay?

Appellant's Brief at 5.

Appellant first asserts that the evidence was insufficient to sustain the jury's finding of guilt with respect to each conviction. Appellant's Brief at 10.

_(Footnote Continued)_ ───────────────────

        protect society and improve chances of rehabilitation. **_Id._** (quoting **_Gagnon, supra_** at 784).

**_Heilman_**, 876 A.2d at 1026–1027.

In reviewing a sufficiency challenge, "we examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a reasonable doubt." *Commonwealth v. Doughty*, 126 A.3d 951, 958 (Pa. 2015). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Beasley*, ___ A.3d ___, ___, 2016 PA Super 92, at *4 (Pa. Super. filed April 28, 2016). The finder of fact is free to believe all, part, or none of the evidence. *Commonwealth v. Tejada*, 107 A.3d 788, 793 (Pa. Super. 2015), *appeal denied*, 119 A.3d 351 (Pa. 2015). As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Rogal*, 120 A.3d 994, 1001 (Pa. Super. 2015).

Initially, we note that Appellant has waived any argument concerning the sufficiency of the evidence regarding the charges for possession with intent to deliver, criminal use of communication facility, and flight to avoid apprehension. To preserve a claim that the evidence was insufficient, Appellant must articulate the specific elements of the crime that he alleges the evidence does not support. *See Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) (finding waiver where the appellant not only failed to specify the elements of a particular crime, but did not even mention

the specific convictions that he was challenging as insufficient). ***See also***

***Commonwealth v. Gibbs***, 981 A.2d 274, 281 (Pa. Super. 2009) (finding

claim waived for failure to specify either in Rule 1925(b) statement or in

argument portion of appellate brief which elements of crimes were not

proven beyond a reasonable doubt). Appellant's generic statement that

"[t]here was insufficient evidence to sustain the jury's finding of guilt with

respect to each count of which [he] was convicted," does not specify which

elements of which crimes he challenges as being insufficiently proven.[5]

Appellant's Brief at 10. Consequently, Appellant's broad, generic claim

challenging the sufficiency of the evidence is waived. ***Garland***, 63 A.3d at

244; ***Gibbs***, 981 A.2d at 281. Appellant did, however, in subsections (a)

and (b) of his argument, specify certain elements for the charges of

conspiracy and escape that he alleges were insufficiently proven. Appellant's

Brief at 16–17. Thus, we address those issues.

Appellant was convicted of conspiracy, which provides, in pertinent

part, as follows:

> **(a) Definition of conspiracy.--**A person is guilty of
> conspiracy with another person or persons to commit a
> crime if with the intent of promoting or facilitating its
> commission he:
>
> > (1) agrees with such other person or persons that
> > they or one or more of them will engage in

---

[5] The Pa.R.A.P. 1925(b) statement was similarly, indeed additionally, vague.

conduct which constitutes such crime or an attempt or solicitation to commit such crime[.]

18 Pa.C.S. § 903(a)(1). An agreement to work harmoniously toward a criminal purpose is the essence of a conspiracy. **Commonwealth v. Savage**, 566 A.2d 272, 276 (Pa. Super. 1989). "[A] conviction for conspiracy requires proof of the existence of a shared criminal intent. . . . [A] conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation." **Commonwealth v. McCall**, 911 A.2d 992, 996–997 (Pa. Super. 2006) (quoting **Commonwealth v. Johnson**, 719 A.2d 778, 784–785 (Pa. Super. 1998) (*en banc*)). Appellant has preserved a challenge only to the agreement element. Appellant's Brief at 16. An agreement may be inferred from circumstances such as the relationship between the parties, participation in the crime, and the conduct of the parties surrounding the criminal incident. **Commonwealth v. Devine**, 26 A.3d 1139, 1147 (Pa. Super. 2011).

Appellant contends that his situation is congruous to the one in **Commonwealth v. Smythe**, 369 A.2d 300 (Pa. Super. 1976). Appellant's Brief at 16. In **Smythe**, this Court vacated a police officer's conspiracy conviction because "the evidence failed to show any understanding or agreement." **Smythe**, 369 A.2d at 302. The evidence in **Smythe** established that the officer, the two named co-defendants, and the two

- 9 -

unidentified officers beat the appellee, but the testimony established only the act, not the agreement. *Id.*

In the instant case, the testimony at trial established that during the controlled buy on August 8, 2013, Appellant was driving a light-colored Dodge with an unidentified male passenger to meet the C.I. at an agreed-upon location. N.T. (Day One), 6/22/15, at 106, 147. Prior to this meeting, the C.I. sent Appellant a text message asking, "[C]an you do the same thing[?]" meaning the same arrangement as the August 1 buy. N.T. (Day Two), 6/23/15, at 58. Appellant responded, "I'll give you a 'B' for that." *Id.* Once they reached the location of the buy, the unidentified male passenger left Appellant's vehicle and entered the C.I.'s car. N.T. (Day One), 6/22/15, at 148. Appellant waited in the Dodge for the unidentified passenger to exit the C.I.'s car, and they left the scene together. *Id.* The C.I. testified that she gave the unidentified male $200 for a bag of cocaine. *Id.* at 107–108.

The C.I. gave the cocaine she received from the unidentified male to Sergeant Moser. N.T. (Day One), 6/22/15, at 109. Corporal Douglas strip-searched the C.I, and Patrolman Crist searched her vehicle before departure and immediately upon return from the buy, leading to the logical conclusion that the cocaine was obtained from the unidentified male. *Id*. at 47. After the buy, Appellant called the C.I. to ask if she was "working" with the police. N.T. (Day Two), 6/23/15, at 108. The evidence of record compels the conclusion that jurors could find that Appellant and the unidentified male

- 10 -

conspired together to distribute controlled substances. Thus, Appellant's sufficiency challenge to the conspiracy conviction lacks merit.

Appellant also was convicted of escape under 18 Pa.C.S. § 5121(a), which provides, in pertinent part, as follows:

> **(a)   Escape.**--A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

18 Pa.C.S. § 5121(a). Official detention is defined as:

> [A]rrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail.

18 Pa.C.S. § 5121(e).

Appellant has preserved a challenge to whether he was in "official detention." Appellant's Brief at 17. Because Appellant was not in police custody or detained in a facility, the relevant question posed is whether the facts of this case fall under "any other detention for law enforcement purposes." *Commonwealth v. Santana*, 959 A.2d 450, 452 (Pa. Super. 2008). This phrase has previously been interpreted to mean a seizure in which "the police have restrained the liberty of a person by show of authority or physical force." *Commonwealth v. Stewart*, 648 A.2d 797, 798 (Pa. Super. 1994). The determination of whether or not a seizure has

- 11 -

occurred is based on the totality of the circumstances and "whether a reasonable person would have believed he or she was free to leave." *Id.*

Appellant argues that the facts of this case are similar to those in *Commonwealth v. Woody*, 939 A.2d 359, 361 (Pa. Super. 2007). In that case, an officer in a marked car initiated a traffic stop, and the appellant refused to stop his vehicle. *Woody*, 939 A.2d at 361. After turning off his headlights and speeding up, Appellant eventually stopped his vehicle, abandoned his car, and fled on foot. *Id.* He was apprehended by the officer. *Id.* This Court vacated the appellant's conviction of escape, stating that the appellant never was detained. Rather, we opined that he merely ignored the officer's instructions to stop and get on the ground. *Id.* at 363.

The instant case, instead, is factually similar to *Santana* and *Stewart*. In *Santana*, police officers were in pursuit of the appellant, who was wanted on a state parole violation. *Santana*, 959 A.2d at 451. After pursuit, the appellant eventually was apprehended by an officer. *Id.* This Court determined that because the officer wore a bulletproof vest that said "POLICE" in gold letters on the front, wore his service belt, displayed his police badge, and had an outstanding warrant for the appellant, there was sufficient evidence to conclude that the appellant was in official detention. Therefore, we upheld the escape conviction. *Id.* at 453; *see also Commonwealth v. Colon*, 719 A.2d 1099, 1101 (Pa. Super. 1998) ("It is the warrant which extends the power of the state over the [appellant],

beyond the mere assertion he is under arrest, and completes the required element of official detention necessary to constitute the crime of escape.").

In **Stewart**, police were called to a domestic disturbance involving the appellant. **Stewart**, 648 A.2d at 797. An officer, in uniform and driving a marked police car, arrived at the scene. **Id.** The officer was suspicious that the appellant was armed, so he drew his gun and ordered the appellant to put his hands on the dashboard. **Id.** Instead, the appellant drove away and eventually was apprehended by the officer after a twenty-minute chase. **Id.** The appellant challenged the sufficiency of the evidence supporting the fact that he was in official detention. **Id.** at 798. This Court determined that under the circumstances, the officer "exhibited a show of authority," and a reasonable person would not believe that he was free to leave when a uniformed police officer points a gun and orders him to stop. **Id.**; **see also Commonwealth v. Jackson**, 630 A.2d 1231, 1236 (Pa. Super. 1993) ("Not all interactions between the police and citizens involve seizure of persons. Only when the police have restrained the liberty of a person by show of authority or physical force may we conclude that a seizure has occurred.").

Here, the testimony established that Patrolman Heck, under the alias of "Natalie," organized a meeting with Appellant. N.T. (Day Three), 6/24/15, at 3–4. When deciding on a location to meet, Appellant changed the location multiple times due to his trepidation to venture too far due to "police activity." **Id.** Patrolman Heck appeared at the location designated

- 13 -

by Appellant and had support officers, whom she planned to radio for backup when she saw Appellant approach her car, stationed around the area of Second Avenue and Lloyd Street. *Id.* at 9. Officer Heck was surprised by Appellant when he approached from a nonvisible angle. *Id.* at 9–10. As Appellant tried to open the locked car door, Patrolman Heck, dressed in her police uniform and armed with her service belt, exited the automobile, ran to the back of the vehicle, and pulled her service weapon. *Id.* at 11. She pointed her gun at Appellant and yelled, "[P]olice; show me your hands," whereupon Appellant turned to face her, hesitated by jumping from foot to foot, and eventually fled. *Id.* at 11, 18–20. After chasing Appellant, Patrolman Heck found him hiding under a child's slide, but Appellant ran off again when Officer Heck shined her flashlight on him, announced herself as police, and once again ordered him to stop. *Id.* at 22–23.

After Appellant was apprehended, testimony established that Appellant made unsolicited comments to Patrolman Heck while in the back of the police car. Appellant told Patrolman Heck that "this was the first time a female ever got one over on [me]." N.T. (Day Three), 6/24/15, at 25. The record also reflects that Appellant was displaying signs of amusement while he was making this statement to Patrolman Heck. *Id*.

Under these facts, the jury concluded that a reasonable person in Appellant's position would not believe he was free to leave. Clearly, Patrolman Heck, who identified herself as a police officer and who was

dressed in full uniform with her gun drawn, was displaying her authority in order to detain Appellant. Police also were there to arrest Appellant under outstanding warrants which "extends the power of the state . . . beyond the mere assertion that [Appellant] was under arrest." *Colon*, 719 A.2d at 1101. There was sufficient evidence presented to support the conviction for escape.

Next, we address Appellant's contention that the trial court did not consider mitigating factors and abused its discretion in sentencing Appellant at CR 0290-2015, CR 0315-2015, CR 0316-2015, and CR 1554-2009.[6] Appellant appeals from the sentence following probation revocation as well as the sentences imposed for the new crimes. Specifically, he asserts that the trial court failed to consider mitigating factors and assails the discretion of the court in imposing the sentences consecutively. A discretionary challenge is not subject to our review as a matter of right. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal[.]" *Commonwealth v. Treadway*, 104 A.3d 597, 599 (Pa. Super. 2014); *see also Commonwealth v. Archer*, 722 A.2d 203, 211 (Pa. Super. 1998) ("[A]ny misapplication of the Sentencing

_____

[6] The trial court and Appellant used different variations for the formatting of the trial court docket numbers. We refer to them as written above, which is consistent with the trial court's designation on the complaints.

Guidelines constitutes a challenge to the discretionary aspects of sentence.").

To effectuate this Court's jurisdiction when challenging the discretionary aspects of a sentence, Appellant must satisfy a four-part test by (1) preserving the issue in the court below, (2) filing a timely notice of appeal, (3) including a Pa.R.A.P. 2119(f) statement in his appellate brief, and (4) raising a substantial question for our review. *Commonwealth v. Spenny*, 128 A.3d 234, 241 (Pa. Super. 2015) (quoting *Tejada*, 107 A.3d at 797).

Applying the four-part analysis to the instant case, we find that Appellant (1) preserved the issue; (2) timely filed his notice of appeal on September 26, 2015; and (3) complied with Pa.R.A.P. 2119(f) by including in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence. Appellant's Brief at 20–23. Acknowledging that "the determination of what constitutes a substantial question must be evaluated on a case-by-case basis," *Commonwealth v. Johnson*, 125 A.3d 822, 826 (Pa. Super. 2015), we note that this Court has held that an excessiveness claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question. *See*, *e.g.*, *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (In excessiveness claim, substantial question raised when the appellant sufficiently articulates the manner in which the sentence

- 16 -

violates either a specific provision of the Sentencing Code or a particular fundamental norm underlying the sentencing process.). Therefore, we proceed to address the merits of Appellant's claim.

Appellant argues that the sentencing court abused its discretion by failing to consider mitigating factors and by imposing his new sentence consecutive to his prior sentence, thus rendering the sentence "manifestly excessive." Appellant's Brief at 22–23. In support of his claim, Appellant relies on factors reported in his PSI Report. Appellant's Brief at 22.

Our standard of review for challenges to the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Johnson*, 125 A.3d at 826 (quoting *Commonwealth v. DiSalvo*, 70 A.3d 900, 903 (Pa. Super. 2013)).

Appellant does not argue that the sentencing court misapplied the guidelines or sentenced him outside of the guidelines. Indeed, the sentence imposed was in the standard range. Trial Court Opinion, 11/13/15, at 5. We also recognize that trial courts generally have the discretion to impose sentences consecutively. *Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 784 (Pa. Super. 2015) (*en banc*), *appeal denied*, 123 A.3d 331 (Pa.

- 17 -

2015). However, Appellant asserts that his sentence was excessive because the sentencing court failed to consider certain mitigating factors, such as his age; the fact that there were no violent crimes charged; and that Appellant cooperated with and displayed respect for the court throughout the jury trial. Appellant's Brief at 22.

We note that "[w]here, as here, the trial court has the benefit of a pre-sentence report, we presume that the court was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors." *Commonwealth v. Seagraves*, 103 A.3d 839, 842 (Pa. Super. 2014). Also, in its Rule 1925(a) opinion, the trial court specifically stated:

> We also considered [Appellant's] prior criminal history as outlined in the pre-sentence investigation report as well as the other information presented in the pre-sentence investigation. The information presented in the pre-sentence investigation report included what the [c]ourt believed were aggravating and mitigating circumstances but the [c]ourt ultimately felt that it was appropriate to impose sentences that were within the standard range of the state sentencing guidelines. . . . We also believe it was appropriate because [Appellant] had previously served a sentence in the State Correctional Institution of a little over two and a half years. The [c]ourt is troubled by the fact that [Appellant] did not redeem or rehabilitate himself despite the lengthy period of prior incarceration in the State Correctional Institution. This prior sentence not only failed to rehabilitate [Appellant] but failed to deter him from committing the serious crimes involved in this case.

Trial Court Opinion, 11/13/15, at 5. It is clear from the record that the sentencing court did not ignore or misapply the law, nor is there record evidence that the court "exercised its judgment for reasons of partiality,

prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *DiSalvo*, 70 A.3d at 903. The record also does not reflect reason to conclude that the sentencing court misapplied any of the guidelines. *See Raven*, 97 A.3d at 1254. Accordingly, the trial court did not abuse its discretion in sentencing Appellant.

Finally, we consider Appellant's claim that his right to due process under the 14th Amendment of the United States Constitution and Article I Section 9 of the Pennsylvania Constitution was denied due to a pre-arrest delay. Appellant's Brief at 23. A defendant's due-process right against pre-arrest delay is limited. *Commonwealth v. Simpson*, 66 A.3d 253, 283 (Pa. 2013). Our Supreme Court has held that in order to prevail on a due-process claim based on pre-arrest delay,

> the defendant must first show that the delay caused him actual prejudice, that is, substantially impaired his or her ability to defend against the charges. The court must then examine all of the circumstances to determine the validity of the Commonwealth's reasons for the delay. Only in situations where the evidence shows that the delay was the product of intentional, bad faith, or reckless conduct by the prosecution, however, will we find a violation of due process. Negligence in the conduct of a criminal investigation, without more, will not be sufficient to prevail on a due process claim based on pre-arrest delay.

*Commonwealth v. Scher*, 803 A.2d 1204, 1221 (Pa. 2002) (footnote omitted). Appellant must be able to show that "the passing of time caused actual prejudice and that the prosecution lacked sufficient and proper

reasons for postponing the prosecution." ***Commonwealth v. Snyder***, 713 A.2d 596, 601 (Pa. 1998).

Here, the testimony does not establish any such prejudice for postponing Appellant's arrest. The crimes occurred on August 1, 2013, and August 8, 2013, and the complaint was not filed until December 9, 2014, which is a delay of one year, four months, and eight days. Trial Court Opinion, 11/13/15, at 6. The testimony established that such delay was common in cases involving narcotic sales and confidential informants. N.T. (Day One), 6/22/15, at 61. Sergeant Moser also testified that because the C.I. stopped cooperating and subsequently was arrested, the ensuing investigations and arrests of the people involved also were delayed. ***Id.***

The record supports the conclusion that Appellant has failed to show actual prejudice. Moreover, the prosecution articulated sufficient reasons for postponing prosecution. Thus, in light of the facts established in the record, we conclude that Appellant's due process rights were not violated due to a pre-arrest delay.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2016