J-S39038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD SEELEY | : | |
| | : | |
| Appellant | : | No. 2342 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 13, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004747-2008

BEFORE:   GANTMAN, P.J.E., STABILE, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED AUGUST 21, 2019**

Appellant, Edward Seeley, appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County after the court determined he violated the conditions of his probation.  We affirm.

The trial court summarizes the pertinent history of the case, as follows:

On September 12, 2012, Appellant entered into a negotiated guilty plea to Violation of the Uniform Firearms Act § 6105, a felony of the second degree.  Appellant was immediately sentenced to 1 to 4 years state incarceration and 5 years reporting probation to run consecutive.

On August 18, 2016, a violation of probation hearing was held before the Honorable Timika Lane after Appellant tested positive for amphetamines numerous times.  Appellant was found in technical violation and probation was continued.

Several instances occurred throughout 2016 wherein Appellant either expressed his desire to commit suicide to his probation officer or physically attempted suicide.  On January 5, 2017, Appellant's federal probation was revoked and he was sentenced by a federal judge to 12 months' incarceration.

_____

*   Former Justice specially assigned to the Superior Court.

In January 2018, Appellant notified his county probation officer that he was having issues with his ex-girlfriend, that a Protection From Abuse petition ("PFA") had been filed against him, and that she was threatening to call his probation officers. On February 26, 2018 and March 26, 2018, Appellant tested positive for amphetamines. Appellant told his probation officer that the positive tests were the result of a nasal decongestant and/or prescription medications. He was told by his probation officer to get a prescription for any necessary medication.

In April 2018, the probation department was notified that a PFA was filed against Appellant and that Appellant's ex-girlfriend claimed that Appellant was increasingly abusive after having recently resumed drug use. On April 2, 2018, Appellant informed the probation department that he was admitting himself to Friends Hospital.

On April 3, 2018, after never receiving notification from Friends Hospital, Appellant's probation officer contacted Appellant for verification. Having not heard from Appellant, a contact notice was sent informing Appellant to report on April 10, 2018. Appellant did not report on April 10, 2018, as required.

On April 11, 2018, Appellant contacted his probation officer to inform him that he had overdosed on medication and spent a week in the hospital. Penn Medicine paperwork submitted to the probation department verified that Appellant did overdose on antidepressant medication.

Appellant did not report for his next scheduled visit on April 17, 2018. On April 19, 2018, a SWAT team from the Philadelphia Police Department was called to Appellant's residence after he barricaded himself in the residence, which reportedly was broadcast on local television, related to violating his PFA. On June 7, 2018, the charges related to the violation of the PFA were withdrawn.

On June 8, 2018, the court held a violation of probation hearing. During the hearing, the report from the probation officer, dated 6/1/18, was incorporated by reference. The probation department's recommendation was for probation to be revoked and for Appellant to receive a mental health evaluation, mental

health treatment, and be further supervised by the mental health unit of the probation department.  (N.T. 6/08/18), p.6).

The court was informed that Appellant tested positive for amphetamines on [March 26, 2018].  Defense counsel argued that the positive result was from prescription medication Vyvanse, however, the probation officer testified that such medication would only test positive if it were being abused and if the individual had high dosages in [his] system.  *Id.* at 7.  Appellant denied abusing his prescription medication, but this argument was rebuked by the probation officer, who stated that Appellant has a history of testing negative and then positive, off and on, which indicated that his positive tests were the result of drug abuse rather than the result of normal prescription drug use.  *Id.* at 13.

The court found Appellant in technical violation for abusing amphetamines.  His probation was revoked and a mental health evaluation was ordered to be completed while in custody.  *Id.*

On July 13, 2018, Appellant appeared before the court for sentencing on his technical violation.  The court sentenced Appellant to 11 ½ to 23 months incarceration plus 3 years' probation with the option to be paroled if placement could be found in a long-term dual diagnosis inpatient program.

On August 6, 2018, Appellant filed a Notice of Appeal with the Superior Court.  On October 31, 2018, the court sent a 1925(b) order directing Appellant to file a Concise Statement of Errors Complained of on Appeal.  On November 19, 2018, Appellant filed his Statement of Errors Complained of on Appeal.  A supplemental Statement of Errors Complained of on Appeal was filed with the court on November 28, 2018.

Trial Court Opinion, 12/21/18, at 2-4.

Appellant presents the following questions for our consideration:

1. Was not the evidence introduced at the probation revocation hearing insufficient as a matter of law to establish a technical violation of probation?

2. Did not the trial court err and violate the requirements of 42 Pa.C.S.A. § 9771(c) by sentencing appellant to total confinement absent him having been convicted of a new crime,

absent any indication that he was likely to commit a new crime, and absent a showing that the sentence was "essential to vindicate the authority of the court"?

3. Did not the trial court err as a matter of law and violate the discretionary aspects of sentencing when it imposed a manifestly excessive and unreasonable sentence, where it failed to consider appellant's personal history and rehabilitative needs, and the sentence was in excess of what was necessary to address the gravity of the offense, the protection of the community and appellant's rehabilitative needs?

Appellant's brief, at 4.

At the outset, we observe that "in an appeal from a sentence imposed after the court has revoked probation, we can review the validity of the revocation proceedings, the legality of the sentence imposed following revocation, and any challenge to the discretionary aspects of the sentence imposed." **Commonwealth v. Wright**, 116 A.3d 133, 136 (Pa. Super. 2015) (citation omitted).  Further,

[r]evocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion.  When assessing whether to revoke probation, the trial court must balance the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison.  In order to uphold a revocation of probation, the Commonwealth must show by a preponderance of the evidence that a defendant violated his probation.  [T]he reason for revocation of probation need not necessarily be the commission of or conviction for subsequent criminal conduct.  Rather, this Court has repeatedly acknowledged the very broad standard that sentencing courts must use in determining whether probation has been violated[.]  A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct.

- 4 -

*Commonwealth v. Colon*, 102 A.3d 1033, 1041 (Pa. Super. 2014) (internal citations and quotation marks omitted; some brackets added).

In Appellant's first issue, he contends the record is "devoid of any evidence that he committed any technical violations of his probation.  Mr. Seeley offered valid explanations regarding his use of prescription medications and his contact with the probation department, and the Commonwealth introduced no evidence to refute Mr. Seeley's assertions."  Appellant's brief, at 21.  Having mental health issues and attempting suicide, Appellant continues, likewise fails to constitute probation violations.

Appellant's argument goes to the sufficiency of evidence offered against him at his *Gagnon II*,[1] probation revocation hearing.  With respect to such a claim, we observe:

> there is a lesser burden of proof in a *Gagnon II* hearing than in a criminal trial because the focus of a violation hearing is "whether the conduct of the probationer indicates that the probation has proven to be an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future antisocial conduct." [*Commonwealth v. Sims*, 770 A.2d 346, 350 (Pa.Super. 2001)] (internal citation omitted).  Thus, the Commonwealth need only prove a violation of probation by a preponderance of the evidence. *Id.*

*Commonwealth v. Allshouse*, 969 A.2d 1236, 1240-41 (Pa.Super. 2009).

The terms of Appellant's probation required him to comply with his drug treatment plan and obey the law.  As described in the court's opinion,

---

[1] *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

reproduced above, the Commonwealth introduced both the written report[2] and the testimony of Appellant's probation officer to prove by preponderance that Appellant willfully abused drugs in violation of his drug treatment plan. Specifically, the probation officer indicated Appellant tested positive for amphetamines six times, including once when he attempted suicide, which established a pattern indicating an "abuse cycle" involving either ingesting too many of his prescribed medications or ingesting additional medications not prescribed. N.T. 6/8/18, at 12-13. The probation officer thus opined that Appellant's innocuous explanation for his positive results was not credible.

Crediting the testimony of the probation officer, the court reasonably inferred from the totality of these circumstances that Appellant willfully abused amphetamines and represented a danger to himself and the public. Discerning no abuse of discretion with the court's determination, we conclude Appellant's sufficiency claim lacks merit.

Appellant remaining issues coalesce to challenge the imposition of a sentence of total confinement as excessive and against the norms of sentencing given what was, he posits, a lack of evidence that he had committed another crime or was likely to commit another crime if not imprisoned. There was no evidence of record to support the court's conclusion

---

[2] The written report also described Appellant's admissions to overdosing on drugs, his recent suicide attempt, the Protection from Abuse allegations filed against him, and his confrontation with law enforcement officers investigating such allegations.

that Appellant suffered from mental health issues that caused him to be a danger to society, Appellant maintains, and he had demonstrated at the hearing through his "apt explanations regarding his medications" that he was compliant with his treatment program. Appellant's brief, at 17. We disagree.

Such a challenge to the discretionary aspects of a sentence is not appealable as of right. Rather, Appellant must petition for allowance of appeal pursuant to 42 Pa.C.S.A. § 9781. *Commonwealth v. Hanson*, 856 A.2d 1254, 1257 (Pa.Super. 2004).

> Before we reach the merits of this [issue], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. The third and fourth of these requirements arise because Appellant's attack on his sentence is not an appeal as of right. Rather, he must petition this Court, in his concise statement of reasons, to grant consideration of his appeal on the grounds that there is a substantial question. Finally, if the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa.Super. 2013) (citations omitted); *see also Commonwealth v. Kalichak*, 943 A.2d 285, 289 (Pa.Super. 2008) ("[W]hen a court revokes probation and imposes a new sentence, a criminal defendant needs to preserve challenges to the discretionary aspects of that new sentence either by objecting during the revocation sentencing or by filing a post-sentence motion.").

Here, Appellant preserved his claim in his motion for reconsideration, and he filed a timely notice of appeal. Appellant has also included in his brief a concise statement pursuant to Pa.R.A.P. 2119(f). *See* Appellant's Brief at 16–19. Moreover, Appellant's claim that the trial court sentenced him to a term of total confinement based solely on a technical violation raises a substantial question for our review. *See Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa.Super. 2010) (holding revocation sentence of total confinement, based on technical violation rather than new criminal offense, implicates fundamental norms underlying sentencing process). We, therefore, review Appellant's discretionary aspects claim.

Our standard of review is well-settled. We have explained:

> The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment—a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Simmons*, 56 A.3d 1280, 1283–84 (Pa.Super. 2012).

> In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference.

*Commonwealth v. Mouzon*, 828 A.2d 1126, 1128 (Pa.Super. 2003).

Upon revoking probation, a sentencing court may choose from any of the sentencing options that existed at the time of the original sentencing, including incarceration. 42 Pa.C.S.A. § 9771(b). "[U]pon revocation [of probation] ... the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence." *Commonwealth v. Infante*, 63 A.3d 358, 365 (Pa.Super. 2013) (internal quotation marks and citations omitted). However, 42 Pa.C.S.A. § 9771(c) provides that once probation has been revoked, a sentence of total confinement may only be imposed if any of the following conditions exist:

> (1) the defendant has been convicted of another crime; or
> (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or
> (3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S.A. § 9771(c).

"In addition, in all cases where the court resentences an offender following revocation of probation ... the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed [and] [f]ailure to comply with these provisions shall be grounds for vacating the sentence or resentence and resentencing the defendant." *Commonwealth v. Cartrette*, 83 A.3d 1030, 1040–1041 (Pa.Super. 2013) (internal quotations omitted); 42 Pa.C.S. § 9721(b). "A trial court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." *Crump*, 995 A.2d at 1282–1283.

*Commonwealth v. Colon*, 102 A.3d 1033, 1043–44 (Pa.Super. 2014).

At the July 13, 2018, sentencing hearing, the trial court considered both a newly prepared mental health evaluation and the facts adduced at the

previous Violation of Probation hearing of June 8, 2018. N.T., 7/13/18, at 4-5. The evaluation contained the psychologist's opinion that Appellant's "complex clinical picture," which includes bipolar disorder, ADHD, and a trauma history, presents a "somewhat poor prognosis" that will improve only if Appellant maintains sobriety and cooperates with treatment. N.T. at 5-6. Otherwise, the psychologist opined, Appellant "will continue to struggle with poor judgment and impulsivity." N.T. at 6.

The court solicited each counsel's sentencing request in light of the evaluation. Defense counsel asked the court to allow Appellant to return to his prior mental health treatment plan, as Appellant had already spent "some time" in jail because of his recent troubles and he requires the continued care of a physician. The prosecutor agreed that Appellant's difficulties center on his mental health issues, but it characterized the issues and Appellant's recent actions as too severe to permit community-based treatment, particularly where outpatient treatment has proven unsuccessful, to date. N.T. at 8-9. Coupled with Appellant's prior convictions for robbery and VUFA violations, the prosecutor asked for some type of secure inpatient treatment before the court would consider revisiting the option of outpatient treatment as part of probation. N.T. at 9-10. Finally, the court stated for the record the probation officer's recommendation of revocation with a mental health treatment from custody. N.T. at 10.

The court permitted Appellant the opportunity to address the court, and, during their extensive exchange, the court expressed its impression that

Appellant has suffered with mental health problems for "a very long period of time" and has not adjusted well to the current treatment plan. N.T. at 12-13. It indicated that Appellant's fixation on talking about his house during their exchange was indicative of his "complete denial about [his] mental health issues," N.T. at 11-12. In this vein, the court took judicial notice of the recent episode requiring a SWAT Team's arrival at his home during an investigation of a PFA filed against him, to which Appellant replied that he was sleeping at the time and did not know why they came. N.T. at 13.

The court thereafter imposed a new sentence of 11 ½ to 23 months' county incarceration, plus three years' reporting probation. A condition of the sentence was that Appellant complete mental health and drug treatment while in jail. The court informed Appellant that it was willing to parole him earlier than 11 ½ months if a FIR evaluation recommends a long-term, dual diagnosis, inpatient treatment program and the county is able to place him in such a facility. N.T. at 15, 18, 20.

Finally, the court admonished Appellant, as follows:

> **THE COURT**:   If you get out earlier than 11 ½ to 23 to an inpatient program, you have to cooperate with them, you have to do everything that they tell you to do. You have to take all your medicines and do all your treatment sessions because if you don't, they are going to send me a letter that you are not cooperating. And you're going to be back in front of me and you might get a state sentence and go back into custody. So I'm sure you be [sic] out of custody because today you were asking me to let you go home, right?
>
> **APPELLANT**:   Yes.

**THE COURT**: So you have to concentrate on addressing your mental health issues and not [on] making anybody think you don't have them or make anybody think they are not there. They are there, you have the mental health issues and you have to address them every day for the rest of your life. Do you understand that?

**APPELLANT**: Yes.

N.T. at 20-21.

Viewing the entirety of the record before us, we find it supports the trial court's exercise of sentencing discretion. Contrary to Appellant's position, the court considered both his rehabilitative needs and the likelihood that he would violate the law again if he were simply to resume his clearly ineffective probationary term and outpatient program. Indeed, the court acknowledged evidence of Appellant's history of drug abuse, failure to keep probation appointments, encounters with law enforcement, and recent attempt to harm himself as collectively warranting imposition of a sentence of incarceration incorporating inpatient mental health treatment. To the extent Appellant contends that he explained away such episodes, the record was such that the court was free to discredit Appellant's explanations.

In light of the foregoing, therefore, we perceive no basis upon which to grant Appellant relief on his discretionary aspects claim, as the court's sentence of incarceration reasonably contemplated both the facts of the probation violation and Appellant's character.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 8/21/2019*